In the Matter of **MOULDED PRODUCTS, INC.**, Debtor. Stockholders' Protective Committee for Moulded Products, Inc., Appellant,

v.

Richard H. **BARRY**, Trustee, et al., Appellees.

Nos. 72–1701, 73–1044.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1973.

Decided March 1, 1973.

Joe A. Walters, Minneapolis, Minn., for appellant.

Arthur L. Doten, Minneapolis, Minn., for appellees.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

The Stockholders' Protective Committee appeals from orders of the District Court with respect to a plan for reorganizing Moulded Products, Inc.

Moulded Products, Inc., is a publicly held corporation engaged primarily in the business of rotational molding. Its financial problems began in 1968, when it attempted to add. two major products to its line. The projects were unsuccessful. The ensuing financial strain overburdened Moulded Products, and, on July 6, 1971, it filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 et seq.

Two hundred and five claims were timely filed, including $9,581.05 in taxes, $271,761.52 in secured claims and $1,545,658.26 in unsecured claims. The largest unsecured claim was filed by the Monsanto Company. This claim of $787,229.00 was represented by promissory notes which were convertible into common stock. Monsanto also filed a claim as a shareholder of 200,000 shares

of Class B stock. Similarly, 1,781 other shareholders filed interests totaling 776,188 shares of Class A stock.

The trustee filed a reorganization plan on May 23, 1972. His plan provided that the shareholders would receive one share of a new common stock for each ten dollars of *positive net worth* of the debtor attributable to their respective holdings of the old common stock. The effect of this provision is that all stockholders will be denied participation in the reorganization because the corporation was found to have a negative net worth. Secured claims were to be paid in full, and unsecured creditors were given the option of exchanging every ten dollars of their claims against the corporation for one share of the new common stock, or of accepting an unsecured promissory note for twenty percent of the value of their claim, due and payable four years from date of confirmation by the court of the reorganization plan. The reorganization plan was approved as to feasibility by the referee and the District Court. This ruling is not questioned on appeal.[1]

The Stockholders' Protective Committee raises three issues on appeal:

(1) That Monsanto's unsecured claim should properly be classified as equity rather than a debt because of the close relationship between Monsanto and Moulded Products.

(2) That the trustee breached his fiduciary duty to the stockholders of Moulded Products in arranging for the assignment by Monsanto of its unsecured claim to Red River Enterprises, Inc., without notice to the stockholders and without giving the stockholders the same opportunity; and that because of

the trustee's wrongful activity, Red River's claim should be limited to the consideration paid.

(3) That the debtor corporation was improperly valued, and that the District Court's finding that the debtor was insolvent was clearly erroneous.

## I. CLASSIFICATION OF MONSANTO'S INTEREST AS DEBT OR EQUITY.

To a large extent, the controversy before us centers around Monsanto's interest in Moulded Products, which was subsequently assigned to Red River Industries, Inc. In 1968, Moulded Products, in an attempt to raise an additional one million dollars in capital, offered common stock to the public. When this offering failed to raise the necessary capital, Moulded Products agreed to transfer 200,000 shares of newly created Class B common stock to Monsanto for $700,000. Monsanto also agreed to lend Moulded Products additional working capital to be represented by corporate notes convertible into additional common stock. Moreover, Monsanto acquired an option to purchase sufficient additional shares of stock to make it owner of fifty-three and one-half percent of the outstanding common stock of Moulded Products. From 1969 to 1971, Monsanto made interest bearing loans to Moulded Products totaling $771,650. Under the reorganization proceedings, its claim, including interest, amounts to $787,229.

The Committee argues that, because of the above transactions, Monsanto was so deeply enmeshed in the affairs of Moulded Products and shared such a large part of the responsibility for its financial difficulty, its interest should

---

1. The feasibility of this reorganization plan appears marginal, but we do not feel that the plan has so little merit as to permit us to set it aside on our own motion. To protect the interest of existing and future creditors and to improve the chances of success of the reorganized corporation, the trustee should proceed immediately to firm up the understanding that he has with Red River for that corporation to furnish adequate working capital to Moulded Products. Moreover, the referee must insist that the trustee advise him of major decisions before they are made so that he can approve or disapprove them. The referee must also proceed to fix the compensation of the trustee at a reasonable sum and to make that compensation a matter of record.

be classified as equity and, therefore, subordinated to the claims of the other unsecured creditors. In support of this argument, the Committee cites Taylor v. Standard Gas and Electric Co., 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939). There, the Supreme Court held that the claim of a parent company against its insolvent subsidiary would be subordinated to the claims of certain shareholders other than the parent. The Court found that the subsidiary's financial problems were due to the poor management inflicted upon it by the parent corporation. The Committee argues that this "Deep Rock" doctrine (named after the subsidiary in *Taylor*) should be extended to this case where there is no technical parent-subsidiary relationship because the substance of the relationship is the same.

■■ A reviewing court in a reorganization proceeding has the power to subordinate claims, but this power is not to be exercised lightly. In re Kansas City Journal, 144 F.2d 791 (8th Cir. 1944). This case is not a proper one for the exercise of the power to subordinate or for an extension of the "Deep Rock" doctrine. In *Taylor*, the subsidiary was completely controlled by the parent, and the disastrous management decisions came from the parent. Here, the two products which caused Moulded Products' downfall were conceived and undertaken by the management of Moulded Products, which then approached Monsanto for financial backing. Although Monsanto did give financial backing to the project and encouraged Moulded Products to proceed, the evidence does not establish that it was primarily responsible for the financial disaster which occurred. On the contrary, the record reveals that Monsanto, in an effort to avoid anti-trust problems, refrained from involving itself in the management of Moulded Products.

The District Court, in an order of October 12, 1972, found that the loans and purchases of the stock interest by Monsanto were "for proper purposes, fair and reasonable, and of beneficial effect to the debtor." It also found that Monsanto assisted Moulded Products financially and in other ways, but did not dominate or control it. The record does not indicate that the transactions between Monsanto and Moulded Products were other than in good faith with the welfare of the latter corporation in mind. Likewise, the record does not show that Monsanto itself was enriched at the expense of Moulded Products or that it was guilty of bad management. Therefore, we hold that the District Court's findings with regard to the Monsanto claim were not clearly erroneous. Monsanto's claim should be classified as an unsecured claim and Red River as Monsanto's assignee should participate on an equal footing with other unsecured creditors in the reorganized corporation.

## II. BREACH OF FIDUCIARY DUTY TO THE STOCKHOLDERS BY THE TRUSTEE.

The Committee argues that the trustee breached his fiduciary duty to the stockholders of Moulded Products when he negotiated the assignment by Monsanto of its unsecured claim and its Class B common stock for $95,000 to Red River Industries, Inc., ninety-seven percent of which was owned by J. D. Farnham, a close friend of the trustee.[2] As a result of the assignment, Red River will control the reorganized corporation. The Committee contends that since the trustee did not give the shareholders the opportunity to buy Monsanto's claim for

---

2. According to the contract of sale, $75,000 of the purchase price was in consideration for assignment of the unsecured claim, and $20,000 was in consideration for assignment of the stock interest. Regarding its stock interest, Red River shares the fate of the other stockholders. Under the rule of absolute priorities, its stock interest is worthless, unless at the time of discharge, the corporation has a positive net worth. Red River will participate in the reorganized corporation only to the extent of its unsecured claim.

the price paid by Red River, the assignment constituted a breach of the fiduciary duty by the trustee. It, therefore, argues that Red River's claim should be limited to the consideration paid to acquire Monsanto's claim.

A. *Trustee's Duty*.

■■ The trustee, appointed by the court in a reorganization proceeding, is a fiduciary and has an obligation to treat all interested parties fairly. Wolf v. Weinstein, 372 U.S. 633, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963). This obligation includes fair treatment of creditors and stockholders.[3] In re Los Angeles Lumber Products Co., 46 F.Supp. 77, 88 (S.D.Cal.1941). However, in this case, the District Court found that there was no breach of fiduciary duty on the part of the trustee, and we hold that this finding is not clearly erroneous.

Additional working capital was required for Moulded Products to be successfully reorganized. Monsanto refused to supply it. The best alternative available to the trustee was to find a purchaser for Monsanto's interest who had the capacity and the willingness to furnish additional working capital.[4] One stockholder tried to negotiate with Monsanto. He was unsuccessful. The employees, with the assistance of the trustee, then tried to buy Monsanto's interest; they were unsuccessful. At that point, the trustee assisted Red River in negotiating an agreement with Monsanto for the purchase of its interest and induced Red River to guarantee a loan to supply working capital for Moulded Products. This loan was secured by a

lien on the accounts receivable and the inventory. There is nothing in the record to indicate that any individual stockholder or group of stockholders, other than those who negotiated unsuccessfully, were interested in purchasing Monsanto's interest and advancing working capital to the corporation. Perhaps the trustee should have actively pursued this possibility with the stockholders, but on the record before us, we cannot say that the trial court erred in holding that his failure to do so was not a breach of his fiduciary duties.

B. *Limiting Red River Claim to the Amount of Consideration if Paid*.

■ Holding as we do that the trustee did not breach his fiduciary duty in arranging for the sale of Monsanto's claim to Red River, we can find no reason to limit Red River's unsecured claim to the amount of consideration it paid.

An authoritative bankruptcy treatise states:

"Where claims or interests have been assigned or purchased, allowance thereof may be controverted on the ground that as a result of fraud, misrepresentation, overreaching or violation of a fiduciary obligation, such claims or interests were acquired for an inadequate consideration, and where this can be shown the court may disallow the claim or interest or (more often) allow it only for the amount actually paid." (Footnotes omitted.)

6A Collier on Bankruptcy § 9.04 at 155–156 (14th ed. 1971).

---

3. See, 6 Collier on Bankruptcy § 7.01 at 1144 (14th ed. 1971), where it stated:
   " * * * [O]nce reorganization becomes necessary, the procedure * * * should be based primarily on the criterion of what is best for the interests of the many whose money has been put into the corporation, as compared with the interests of the management and dominant groups, strategically powerful, who could otherwise force a plan favorable to themselves upon the general body of security holders."

4. In a letter to this Court, dated January 23, 1973, counsel for the Committee enclosed a letter, dated January 19, 1973, signed by four members of the Stockholders' Protective Committee, stating their willingness to guarantee a secured $185,000 bank loan to Moulded Products if the present trustee is replaced. Since we find no breach of fiduciary duty by the trustee, we find the stockholders' offer to be unreasonable.

The cases in which claims are limited to the amount of consideration paid generally deal with transactions where the assignee is in a fiduciary relationship with the corporation or is a close relative of someone in such a fiduciary relationship. There is no such relationship between Red River and Moulded Products. The record does not support the contention that Red River purchased Monsanto's claim for an insufficient consideration, nor does it indicate that Red River had access to information not available to the shareholders when it purchased Monsanto's claim. Moreover, there is no evidence of any fraud or misrepresentation. See, In re Automatic Equipment Mfg. Co., 106 F.Supp. 699 (D.Neb.1952). Consequently, we do not hold the District Court's finding that the assignment was "for proper purposes, fair and reasonable and of beneficial effect to the debtor" to be clearly erroneous.

■ It is unfortunate that the shareholders of Moulded Products will lose their investment. However, they have been accorded all of their rights under Chapter X. They submitted an alternative plan for reorganization, which was properly rejected by the District Court. The shareholders' plan, in which the shareholders would participate and Red River would participate on a subordinated basis, was predicated on a finding of solvency and a finding that the trustee breached his fiduciary duty. Neither of these findings was made. Because we uphold the District Court on its findings concerning solvency (see Part III of this opinion, *infra*) and breach of fiduciary duty, we hold that the District Court's rejection of the shareholders' plan was reasonable. Under the rule of absolute priorities, if the corporation is insolvent, the shareholders may not participate in the reorganized corporation. Consolidated Rock Products Co. v. DuBois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982 (1941).

Even if we were to limit Red River's claim to the consideration it paid, the corporation would still be insolvent and the shareholders would not be affected by our ruling on this issue. Moreover, none of the creditors—secured or unsecured—has objected to the Monsanto-Red River transaction or to the status of Red River's claim.

### III. VALUATION.

The appellant contends the going concern value of Moulded Products was erroneously fixed at $900,000.

■■ It is uncontested that the District Court used the proper measure of valuation. In reorganization proceedings, the test of the fair value of the debtor's property is the earning power of the corporation as a going concern. Consolidated Rock Products Co. v. DuBois, *supra* 312 U.S. at 525, 61 S.Ct. 675. The debtor is insolvent if the aggregate amount of its property, as measured by its going concern value is insufficient to pay its debts. In re Muskegon Motor Specialities, 366 F.2d 522, 526 (6th Cir. 1966). The District Court found that Moulded Products was insolvent on July 6, 1971, when it filed its petition for reorganization and, on October 12, 1972, when the finding of insolvency was made, since on both dates its liabilities exceeded its going concern value of $900,000.[5]

■ A determination by the District Court of valuation is a finding of fact and will not be reversed on appeal unless clearly erroneous. Dudley v. Mealey, 147 F.2d 268 (2nd Cir. 1945), cert. denied, 325 U.S. 873, 65 S.Ct. 1415, 89 L.Ed. 1991 (1945). However, the United States Supreme Court in Protective Committee for Independent Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), emphasized that if the District Court does not use the proper measure of future earnings, its valuation cannot stand even though the valuation could

---

5. Liabilities as of July 6, 1971, totaled $2,161,176. Liabilities as of October 12, 1972, totaled $2,187,826.

not be said to be clearly erroneous. The Committee contends that the District Court employed an improper measure of future earnings by using an earnings figure from which estimated interest payments had been deducted. The Committee contends that the amount of interest payments which will be made by the reorganized corporation is a highly speculative figure. Whether the corporation will be financed by equity investment or by loans under reorganization is an "arbitrary management decision," and the trustee, if he desires, can greatly affect the going concern value by his choice of financing, if the earnings figure used to compute this value is reduced by the amount of estimated interest payments. Therefore, the Committee argues that the use of an earnings figure before deduction of interest payments is the only fair method of valuation.

The effect of using the Committee's proposed measure of earnings would be that the going concern value of Moulded Products would probably exceed its liabilities, and the shareholders would not be excluded from participation in the reorganized corporation under the rule of absolute priorities. However, to accomplish this result, the Committee asks us to take an arbitrary approach to valuation and to use, in all instances, an earnings figure before interest payments have been deducted. To take such a stance would be directly contrary to the basic approach courts have taken in the past to valuation of debtor corporations in reorganization proceedings. This approach is that valuation must be determined on a case-by-case basis, and all relevant factors must be taken into consideration in each case in determining going concern value. Consolidated Rock Products Co. v. DuBois, *supra*, 312 U.S. at 526, 61 S.Ct. 675.

We have carefully examined the record before us and find that the District Court acted properly by taking interest payments into consideration in making its determination of valuation. Correspondence and testimony in the record indicate that the reorganized corporation will be financed heavily by loans. In addition, the corporation is assuming all secured debts of the old corporation. Consequently, interest payments will be a definite expense under reorganization.

The rationale underlying the case-by-case determination of valuation is to avoid past errors, guard against overcapitalization, afford the creditors and stockholders a fair and equitable distribution, and assume as far as possible that the new corporation will be able to meet its interest and dividend requirements. Consolidated Rock Products Co. v. DuBois *supra* 312 U.S. at 526, 61 S.Ct. 675; 6A Collier on Bankruptcy, *supra*, § 11.05. To adopt the Committee's argument would result in too high a valuation of the corporation with all the attendant problems described above. We have carefully examined the record and hold that the District Court considered all relevant factors and that its finding as to valuation is not clearly erroneous.

Affirmed.