In re **WEATHERSFIELD FARMS, INC., Debtor.**

**Bankruptcy No. 80–191.**

United States Bankruptcy Court, D. Vermont.

March 17, 1981.

Raymond Phelan, President of the debtor.

Michael J. McGarry, Burlington, Vt., for debtor.

Gary T. Brooks, Norwich, Vt., for First Inter-State Bank.

## MEMORANDUM AND ORDER AS TO CONFIRMATION

CHARLES J. MARRO, Bankruptcy Judge.

The hearing on confirmation of the plan of the Debtor, filed December 20, 1980 with the addition filed February 14, 1981, and the objection of First Inter-State Bank to confirmation came on for hearing on March 4, 1981.

From the testimony adduced at said hearing it appears that the Debtor's long-range plan is the construction and operation of one or all self-contained communities for emotionally and socially maladjusted persons, modelled after the Spring Farm Ranch at Cuttingsville, Vermont an apparently successful operation. The proposed plan is supposed to operate in two stages, the first of which would be the generation of necessary cash from the cutting of timber from approximately 30 acres of land out of a total of approximately 250 owned by the Debtor. The testimony of Raymond Phelan, President of the Debtor indicates that a minimum of $5,000.00 and a maximum of $10,800.00 would result from this operation.

The plan contemplates the execution and delivery by the Debtor to the First Inter-State Bank of a first mortgage in the amount of $54,718.80 on all of the Debtor's property in Thetford, Vermont with interest at 9½% amortized over 25 years with the Debtor to pay interest only for the first 7 years. The mortgage from the Debtor to First Inter-State Bank was foreclosed in the State Superior Court of Orange County and a Decree of Foreclosure was entered on July 9, 1980. The Bank filed a complaint for relief from stay under Section 362(d) and, after hearing, this Court determined that there was equity in the property described in the mortgage and the complaint of the Bank was dismissed with a supporting memorandum in which the Court pointed out that the Debtor, in filing the plan under Chapter 11, had assumed a heavy burden but, in all fairness, it should be given an opportunity to submit a plan to which the Plaintiff could voice its objection. 11 B.R. 148 (Bkrtcy.) The Bank, in this proceeding, has vigorously opposed the plan submitted by the Debtor as well as any addition thereto and during this proceeding there has been considerable litigation between the parties, so much so, that the Attorney for the Debtor has been paid $500.00 for legal services and will be requesting payment for additional services already rendered consisting of 55 hours at $50.00 an hour for a total of $2,750.00 as an administration expense. The Debtor has no cash and its only asset is the 250 acres of land in Thetford, Vermont. Therefore, payment of the sum of $2,750.00 together with any additional charges for legal services will have to come out of any cash generated by the Debtor from the sale of firewood. This will necessarily decrease substantially any cash flow which will be necessary to implement the ultimate goal of the Debtor in the construction and operation of the self-contained community for maladjusted persons. The only creditors of the Debtor are the First Inter-State Bank which is secured by the real estate and Raymond Phelan, Individually, who has an unsecured claim of $50,000.00. The Debtor Corporation is the alter ego of Phelan. It,

therefore, appears that practically the only creditor who is impaired by the plan is the First Inter-State Bank. Phelan as President testified that it may be necessary to borrow additional funds to effectuate the plan and, as a result, the Bank would have to take a subordinate position. As a result the interest of the Bank would be additionally impaired.

The Debtor faces additional and very serious problems if it should reach the second phase of the plan. It would have to comply with the requirements of Act 250 which relates to conditions for the protection of the environment which must be satisfied before the project is approved. Roads would have to be built as an access to the property and this would be very expensive since the terrain is very steep and ledgy. All and all, the cost of satisfying the requirements of Act 250 and constructing the necessary facility would be almost prohibitive in comparison with the amount of cash that the Debtor could raise from any project in its initial stage.

President Phelan testified that there are Federal Grants available for such a project but it is very doubtful from the present political and economic climate that any such grants will be made in the foreseeable future. As a matter of fact, this project was envisioned by President Phelan as far back as 1970 when he received a letter from Dr. Hans R. Huessy relating to the advisability of his plan in constructing a community similar to the Spring Lake Project. It is fair to say that the Debtor has been planning the project since it acquired the land in Thetford in 1971. Since that time it has contacted a number of agencies of the government which might be of assistance and up to the present time it has been unable to obtain a commitment of any funds whatsoever from the grants available. This Court feels that the purpose of the Debtor, as exhibited through its president, is praiseworthy and noble. However, from the testimony presented the conclusion is inevitable that the plan is visionary, impractical and speculative. It is not feasible.

574

The plan has not been accepted by the impaired creditor which vigorously opposes confirmation. It does not comply with the compulsory provisions of Section 1123 of the Bankruptcy Code. The Court is now convinced that the plan has not been proposed in good faith but rather to thwart the efforts of the Bank in completing its State Foreclosure action.

### ORDER

In accordance with the foregoing, IT IS ORDERED that confirmation of the plan is DENIED.