751 F.2d 137
 11 Collier Bankr.Cas.2d 1208, 12 Bankr.Ct.Dec. 1006,
Bankr. L. Rep. P 70,182
 In re John and Lieselotte KOELBL, Debtors.
In re John Koelbl and Lieselotte KOELBL, d/b/a Palatine
Nursing Home, a Partnership, Debtor.
John and Lieselotte KOELBL, Individually, and John Koelbl
and Lieselotte Koelbl, d/b/a Palatine Nursing
Home, a Partnership, Appellants,
v.
Charles A. GLESSING, Appellee.
 No. 306, Docket 84-5050.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 14, 1984.
Decided Dec. 26, 1984.
 
 Thomas A. Dussault, Albany, N.Y. (William J. Dreyer, Harvey and Harvey, Mumford & Kingsley, Albany, N.Y., of counsel), for appellants.
 Fred B. Wander, Albany, N.Y. (Salvatore D. Ferlazzo, Brendan C. O'Shea, O'Connell & Aronowitz, Albany, N.Y., of counsel), for appellee.
 Before OAKES and KEARSE, Circuit Judges, and POLLACK, District Judge.*
 PER CURIAM:
 
 
 1
 In May, 1980, Palatine Nursing Home, a partnership owned by John and Lieselotte Koelbl, and the Koelbls, as husband and wife, filed petitions pursuant to Chapter 11 of the Bankruptcy Code. In April, 1983, the debtors in both proceedings filed an amended consolidated plan of reorganization, the Debtors' Plan. In essence, the Debtors' Plan calls for continued ownership of the nursing home by the Koelbls and the payment to creditors over an eight-year period. Various creditors specifically rejected the Debtors' Plan.
 
 
 2
 At the same time that the debtors submitted their proposal, Charles Glessing, a creditor and former administrator of the nursing home, proposed a competing plan pursuant to 11 U.S.C. Sec. 1121 (1982), the Glessing Plan. Under the Glessing Plan, Mr. Glessing would buy the nursing home, and the proceeds from his purchase would be used to make a substantial down payment to creditors. The Glessing Plan received approval by vote from most of the classes of creditors. One class, however, representing the secured claims of a law firm, did not cast a vote for or against the plan, although the plan provides for full payment of the claims of this class. The classes representing the debtors' interests rejected the Glessing Plan.
 
 
 3
 The United States Bankruptcy Court for the Northern District of New York, Justin J. Mahoney, Bankruptcy Judge, rejected the Debtors' Plan and confirmed the Glessing Plan. The United States District Court for the Northern District of New York, Roger J. Miner, Judge, affirmed the Bankruptcy Court order. We affirm.
 
 
 4
 Appellants offer two challenges to the confirmation of the Glessing Plan. First, they argue that the Glessing Plan should not have been confirmed because it was proposed in violation of 11 U.S.C. Sec. 1129(a), which provides that "[t]he court shall confirm a plan only if ... (3) [t]he plan has been proposed in good faith and not by any means forbidden by law." We accept the debtors' argument that "means forbidden by law" refers inter alia to state law. See In re Landau Boat Co., 13 Bankr. 788, 794 (Bankr.W.D.Mo.1981); 5 Collier on Bankruptcy p 1129.02, at 1129-13 (15th ed. 1984) ("[S]ection 1129(a)(3) requires that the proposal of the plan comply with all applicable law, not merely the bankruptcy law."). Nevertheless, we decline appellants' invitation to extend the duty of loyalty under New York law to prohibit a debtor's former employee from proposing a reorganization plan that transfers ownership to the employee. There is no evidence that Glessing violated the principal duty of an employee by using any confidential information or trade secrets acquired during employment to propose his own plan. See Ability Search, Inc. v. Lawson, 556 F.Supp. 9, 15 (S.D.N.Y.1981), aff'd mem., 697 F.2d 287 (2d Cir.1982); McLean v. Hubbard, 24 Misc.2d 92, 96-97, 194 N.Y.S.2d 644, 649 (1959), aff'd mem., 11 A.D.2d 1084, 208 N.Y.S.2d 443 (1960). And Glessing's proposal cannot be equated with other conduct New York's courts have held violative of an employee's duty of loyalty, such as secretly outbidding the employer on its lease, see Rand Tea & Coffee Stores, Inc. v. Lebowitz, 118 N.Y.S.2d 51, 52 (Sup.Ct.1952) (Steuer, J.), or conspiring to take over the employer's business, see Duane Jones Co. v. Burke, 306 N.Y. 172, 187-88, 117 N.E.2d 237, 245 (1954).
 
 
 5
 We also reject appellants' contention that the Glessing Plan was not proposed in good faith. This court has defined the good faith standard in the bankruptcy context as requiring a showing that the plan was proposed with "honesty and good intentions" and with "a basis for expecting that a reorganization can be effected." Manati Sugar Co. v. Mock, 75 F.2d 284, 285 (2d Cir.1935); see also In re Cyr Bros. Meat Packing, Inc., 2 B.R. 620, 626 (Bankr.D.Me.1980) ("Full disclosure is the very essence of the obligation imposed by the requirement of good faith."). For example, good faith has been found to be lacking if the plan was proposed for ulterior motives. See, e.g., Gonzalez Hernandez v. Borgos, 343 F.2d 802, 805 (1st Cir.1965) ("[A] Chapter XII proceeding may not be used as a vehicle to place a debtor's assets beyond the reach of his dependent children."); In re Weathersfield Farms, Inc., 14 B.R. 572, 574 (Bankr.D.Vt.1981) (bankruptcy cannot be used to thwart foreclosure); 5 Collier on Bankruptcy, supra, p 1129.02, at 1129.15. Moreover, the district court's finding of good faith will not be overturned unless the opponent of the plan can show that the finding was clearly erroneous. See In re Bermec Corp., 445 F.2d 367, 368-69 (2d Cir.1971). Appellants certainly have not satisfied that burden here. There is no evidence that Mr. Glessing was dishonest in any way or that his plan has little chance of success. Cf. In re Flushing Mall Co., 7 B.R. 277, 281 (S.D.N.Y.1980) (noting that rehabilitation of the debtor is not a factor in determining good faith).
 
 
 6
 Second, appellants argue that the Glessing Plan is not "fair and equitable" as required by 11 U.S.C. Sec. 1129(b), containing the so-called "cram down" power. See 5 Collier on Bankruptcy, supra, p 1129.03, at 1129-47. Appellants claim that they are unfairly prejudiced by the waiver of prior status, 11 U.S.C. Sec. 507(a)(6), in respect to claims for taxes by the Internal Revenue Service and the State of New York, since the taxes are nondischargeable. Even if we were to assume that a junior creditor could claim that a plan is not "fair and equitable" because somehow a waiver of priority status by a senior creditor operated to prejudice his claims, an assumption that seems unlikely if not inconceivable, the assumption would not aid appellants. The "fair and equitable" requirement does not look toward protection of debtor interests, but rather toward protection of dissenting creditor interests, absent the value of the ongoing business being large enough to support protection of the debtors. See S.Rep. No. 989, 95th Cong., 2d Sess. 128 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; H.R.Rep. No. 595, 95th Cong., 1st Sess. 413 (1977), U.S.Code Cong. & Admin.News 1978, p. 5963; 5 Collier on Bankruptcy, supra, p 1129.03, at 1129-56, 1129-59. Thus, even though the debtors are prejudiced by the Glessing Plan insofar as it diverts some $32,000 of taxes entitled to priority to the payment of unsecured claims, leaving them with the taxes owed and outstanding after bankruptcy, appellants cannot complain. Finally, since appellants fail to raise other questions about the Glessing Plan--such as whether the $100 payment to an equity claim is improper under Sec. 1129(b)(2)(B)(ii) where an objecting unsecured interest claim remains impaired or whether the plan is discriminatory--we decline to address these issues.
 
 
 7
 Judgment affirmed.
 
 
 
 *
 Of the Southern District of New York, sitting by designation