# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 99-2705

_____

In re: Westpointe, L.P., a Missouri   *
Partnership, doing business as   *
Westpointe Apartments,   *
  *
  Debtor.   *
  *
----------------------------------------   *
  *
Northwest Village Limited   *
Partnership; Grandview Hills   *
Limited Partnership; Parkridge   *
Apartments Limited Partnership;   *
Lamplite Limited Partnership;   *
Westpointe Limited Partnership,   *
  *
  Debtors - Appellants,   *
  *
  v.   *
  *
William E. Franke; Gannon   *
Management Company of Missouri;   *
Prairie Properties, L.L.C.,   *
  *
  Creditors - Appellees.   *
  *
----------------------------------------   *
  *
Northwest Village Limited   *
Partnership; Grandview Hills   *
Limited Partnership; Parkridge   *
Apartments Limited Partnership;   *

Appeal from the United States
District Court for the
Eastern District of Missouri.

Lamplite Limited Partnership;     *
Westpointe Limited Partnership,     *
                                             *

       Debtors - Appellants,     *

       v.     *

Prairie Properties, L.L.C.,     *

       Creditor - Appellee.     *

Cynthia McNeill,     *

       Interested Party - Appellee.     *

Susman, Schermer, Rimmel &     *
Shifrin,     *

       Movant - Appellee.     *

William E. Franke; Gannon     *
Management Company of Missouri,     *

       Creditors - Appellees.     *

_____

Submitted: March 15, 2000
Filed: March 14, 2001

_____

Before HANSEN, HEANEY, and FAGG, Circuit Judges.

_____

2

HANSEN, Circuit Judge.

In short,[1] five real estate limited partnerships ("Debtors") filed for Chapter 11 bankruptcy in September of 1990 after defaulting on their HUD mortgage. A reorganization plan was proposed by appellees William E. Franke and Gannon Management Company of Missouri ("Franke-Gannon"), approved by HUD, and later adopted by the bankruptcy court on June 22, 1992. As of that date, the bankruptcy court determined that the Debtors' estate had assets worth approximately $56.4 million and liabilities worth approximately $75.8 million. The Franke-Gannon reorganization plan was approved over the objection of the Debtors. Debtors appealed, arguing that the bankruptcy court erred in its valuation findings. The district court[2] upheld the bankruptcy court's approval of the Franke-Gannon plan, finding that the estate indeed was insolvent and thus the Debtors' equity interests in the estate were without value and were properly extinguished. Debtors appeal the district court's decision, arguing that the estate's assets actually exceeded its liabilities at the time of the reorganization and that they are entitled to the excess value of the estate because the creditors have otherwise been paid in full. We affirm.

Our standard of review is the same as that of the district court, which reviewed the bankruptcy court's factual findings for clear error and its legal conclusions de novo. See In re Mathiason, 16 F.3d 234, 235 (8th Cir. 1994). A reorganization plan may be confirmed over the objection of equity holders whose interests are being eliminated as long as the "cramdown" requirements of 11 U.S.C. § 1129 are met, and specifically in

---

[1]We do not think it necessary to explain in detail the underlying facts and complicated procedural history of this case because those facts are set forth thoroughly in the district court's opinion. See In re Westpointe, L.P., 234 B.R. 431, 433-37 (E.D. Mo. 1999).

[2]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

this case the requirement in § 1129(b) that the plan be "fair and equitable" to any dissenting class. According to § 1129(b)(2)(C)(ii), a plan is fair and equitable as long as the holder of any interest junior to the dissenting impaired class does not receive any property under the reorganization plan, and because there are no interests junior to the Debtors, the confirmed plan satisfies this requirement. The other primary consideration for determining whether a plan which extinguishes equity interests is fair and equitable is whether the debtor is solvent. See In re Koelbl, 751 F.2d 137, 140 (2d Cir. 1984) ("The 'fair and equitable' requirement [of § 1129(b)] does not look toward protection of debtor interests, but rather toward protection of dissenting creditor interests, absent the value of the ongoing business being large enough to support protection of the debtors."); Moulded Prod., Inc. v. Barry, 474 F.2d 220, 225 (8th Cir.) (explaining that if a business entity is insolvent the shareholders may not be allowed to participate in the reorganized entity even if they will lose their original investment), cert. denied, 412 U.S. 940 (1973). Thus, the main issue in this appeal is whether the bankruptcy court's finding that the Debtors' estate was insolvent is clearly erroneous.

Debtors argue that the bankruptcy court used an erroneous valuation method which underestimated the value of the estate's assets. We disagree. The bankruptcy court principally relied upon the Tellatin Appraisal for purposes of making its valuation determination. The Tellatin Appraisal, which was compiled by a recognized expert according to accepted professional standards, used an accepted valuation method-- income capitalization--that incorporated anticipated future profits and the anticipated reversion value of the apartments into the final present going concern value of the estate. See Moulded Products, 474 F.2d at 225 (holding that the proper measure of valuation in reorganization proceedings is the going concern value of the debtors' estate and that a debtor is insolvent if the "aggregate amount of its property, as measured by its going concern value, is insufficient to pay its debts"). Cf. In re King Resources Co., 651 F.2d 1326, 1335-36 (10th Cir. 1980) (finding capitalization of future earnings approach to valuation proper). We reject Debtors' contention that the failure of the Tellatin Appraisal to take into account the special financing terms of the Franke-

4

Gannon reorganization plan was erroneous. The bankruptcy court did not abuse its discretion in refusing to qualify Debtors' valuation witness Randolph as an expert or in rejecting as not relevant to valuation Randolph's testimony; the special financing terms were not a market condition available to the Debtors, and in any event the market financing assumption behind the Tellatin Appraisal was adequate for purposes of determining solvency of the estate. In sum, we agree with the district court that the income capitalization method of valuation used in the Tellatin Appraisal and relied upon by the bankruptcy court was neither inappropriate as a matter of law nor was its final valuation determination as adopted by the bankruptcy court clearly erroneous.

Debtors also argue that the bankruptcy court overestimated the liabilities of the estate by miscalculating HUD's claim, and that the Debtors are entitled to the leftover funds because all creditors have been paid in full under the confirmed reorganization plan. Specifically, Debtors argue that HUD's secured interest in the properties was limited to the fair market value of the properties ($38.6 million) rather than the amount due on the loans ($64.9 million); that HUD did not have valid claims for the post-default rents ($9.4 million), the money wrongfully disbursed to Franke ($4.5 million), the money in the Bond Stabilization Fund ($330,000), or the two tax refunds ($280,000); and that HUD is improperly receiving over one hundred percent of its secured claim by its entitlement to twenty-five percent of any surplus cash and sale proceeds from the properties.

First, the full $64.9 million due on the HUD loans was correctly considered a liability of the estate. During the bankruptcy proceedings below, HUD filed a valid proof of claim for the full $64.9 million, no objections were raised by the Debtors, and the bankruptcy court proceeded to treat the entire amount as one allowed claim. It is true that the HUD loans were non-recourse and were under-secured by over $25 million given that the fair market value of the collateral (the apartment buildings) pledged as security for the loans was only $38.6 million. But under 11 U.S.C. § 1111(a), loans of this sort receive recourse treatment even if they are contractually non-

5

recourse. We reject Debtors' argument that HUD's failure to make an election under § 1111(b) precludes treating the unsecured portion of HUD's claim the same as the secured portion of the claim, because the Franke-Gannon plan clearly treated the two claims as part of the same class of interests and the Debtors failed to raise a proper and timely objection. We therefore hold that HUD's entire $64.9 million claim was properly considered a liability against the Debtors' estate for purposes of determining insolvency and confirming the Franke-Gannon reorganization plan.

Second, we reject the Debtors' contention that they are entitled to the value of the post-default rents, the stabilization funds, and the tax refunds. We agree with the courts below that these funds are encumbered by HUD's liens and perfected security interests, but even if they are not, any error regarding HUD's entitlement (and Debtors' lack thereof) is harmless because the total amount of the funds is less than the $18 million shortfall of the estate as determined at valuation. For similar reasons, in addition to the failure of the Debtors to raise a proper objection below, we also reject Debtors' argument that they are entitled to the value of the Franke claim.

Third, we reject the Debtors' contention that HUD impermissibly received greater than one hundred percent of its claim. The Debtors not only failed to object to confirmation of the plan on this basis, which means we would have to address the issue for the first time on appeal, but we are also not convinced that the present value of HUD's entitlement to twenty-five percent of any surplus cash and any net sale or refinancing proceeds of the properties clearly amounts to HUD receiving greater than one hundred percent of its claim. The present value of this entitlement would have to be reduced to account for the time value of money, the twenty-five percent stake appears to be in return for the reduced loan interest rate agreed to by HUD in the reorganization plan, and the Debtors even argued at the valuation hearing that the present value of all the payments to HUD (including the twenty-five percent stake) aggregated $58.3 million which is still less than HUD's $64.9 million claim. In short, this is a factual dispute between the parties reviewed for clear error, and the confirmed

reorganization plan does not clearly and erroneously grant to HUD payments exceeding one hundred percent of its rightful claim.

Finally, we reject the remaining arguments of the Debtors because they are without merit or they were not raised properly in the courts below.

Based on the foregoing reasons, we affirm the district court's judgment upholding the bankruptcy court's decision accepting the proposed reorganization plan for the properties. The motions to dismiss Debtors' appeal based on equitable mootness and for lack of standing are dismissed as moot.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.