**In re DANT & RUSSELL, INC., a Nevada corporation, Debtor.**

**Bankruptcy No. 382–03742.**

United States Bankruptcy Court, D. Oregon.

Dec. 3, 1985.

Richard C. Josephson, Portland, Or., for debtor.

Kevin D. Padrick, for creditors committee.

James A. Lupino, special counsel.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW DENYING PRIORITY STATUS TO CLAIM OF BURLINGTON NORTHERN (# 151)

DONAL D. SULLIVAN, Bankruptcy Judge.

Burlington Northern Railroad Company ("Burlington") filed a claim asserting administrative priority for the potential cost of cleaning up toxic waste deposited by the debtor on land Burlington leased to the debtor prior to and during the chapter 11 proceeding. The debtor moved for permission to reject both the lease in effect at the time of filing chapter 11 and a subsequent lease signed by the debtor's chief executive; objected to the priority status of the claim; and asked the Court to estimate the claim. By agreement, the Court deferred the estimation of Burlington's claim and tried the other issues.

■ Burlington is not entitled to administrative priority for the potential cost of removing toxic waste deposited by the debtor and its predecessors in interest on the Vadis and North Plains sites prior to filing chapter 11, under either the lease executed on March 1, 1983 or the earlier lease in effect at the time of filing.

■ Specifically, the March 1, 1983 lease is avoidable under 11 U.S.C. § 549(a) as a post-petition transaction unauthorized either by the Court or under the Bankruptcy Code. The debtor-in-possession may not lease property other than in the ordinary course of business and may not assume a pre-petition, unsecured obligation as an administrative expense without notice to creditors and a hearing. 11 U.S.C. § 363(b). *Otte v. Manufacturers Hanover Commercial Corp. (In re Texlon)*, 596 F.2d 1092, 1097–98 (2nd Cir.1979). The parties, who estimate the potential cleanup costs in the millions, agree that the debtor's conduct giving rise to the cleanup liability occurred

for the most part before filing chapter 11. The damages, if allowed administrative priority, may be large enough to make confirmation of a plan legally impossible under 11 U.S.C. § 1129(a)(9) without Burlington's consent. Under the evidence, neither party intended this result at the time.

The execution of a lease which Burlington now argues upgraded enormous pre-petition debt to a post-petition priority administrative liability is not an ordinary course of business transaction which the Bankruptcy Code permits without notice and hearing. Had Burlington sought Court approval of either the holdover tenancy or the new lease for the purpose of claims advancement, it would not have been granted after notice and hearing and should not be granted now on a retroactive basis. Consequently, after filing, the debtor occupied the land as a tenant at sufferance and not pursuant to the old lease or pursuant to the avoidable March 1, 1983 lease.

This case is governed by the ruling in *Southern Railway Co. v. Johnson Bronze Co. (In re Johnson Bronze Co.)*, 758 F.2d 137 (3rd.Cir.1985). Burlington's pre-filing right to compel the debtor to restore the leased premises is no more than a claim in the chapter 11 proceeding. *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). The debtors' liability for damage to Burlington arose prior to chapter 11 and there is nothing in the Bankruptcy Code which grants priority for such a claim. It is pure sophism and offensive to the rights of other unsecured creditors to use either the unapproved March 1, 1983 lease or the debtors' post-filing occupancy under the earlier lease to transform the claim into an administrative claim.

Burlington and counsel for the United States suggested that this Court create a special administrative priority treatment for this type of claim based on "public policy." This suggestion must be rejected. First, priorities are statutory. Designation of priorities is the province of Congress, and courts are not free to fashion their own super- or sub-priorities. *See* 3 *Collier on Bankruptcy* 507–17 (15th ed.

1979 & Supp. 1985) and cases there cited. Secondly, to maintain the integrity and uniformity of the bankruptcy system, historically priority statutes have been strictly construed. Thirdly, public policy arguments are not peculiar to cases of environmental damage but can also be made to support priority for other cases of delayed damage. *Matter of Cott Corp.*, 47 B.R. 487, 491 (Bankr.D.Conn.1984). Lastly, even if the above were not true, whatever discretion might remain under 11 U.S.C. § 549(a)(2)(B) to now approve either lease as a means of granting priority should be · weighed against the danger of allowing statutory priorities set forth in the Code and carried into chapter 11 by 11 U.S.C. § 1129(a)(9) to be swallowed by Court created administrative priorities. Any discretion allowable under sections 363, 365, 549(a) or other statutes to approve post-filing transactions in order to elevate pre-petition tort debt to administrative priority outside of a plan should not be exercised unless reasonably beneficial to all creditors in light of the existing statutory priorities. In short, the public policy arguments put forth by Burlington and the government, while worthy of consideration in this case, should be addressed to Congress.

To the extent that *In re Quanta Resources Corp.*, 739 F.2d 927 (3rd Cir.1984), *cert. granted sub nom. O'Neil v. City of New York,* — U.S. —, 105 S.Ct. 1168, 84 L.Ed.2d 319 (1985) suggests a different result, it is distinguishable. As pointed out in *Johnson Bronze, supra,* priority was not an issue in *Quanta.* In addition, unlike the *Quanta* case, here the debtor-in-possession *qua* trustee has not petitioned to abandon the property to a bankrupt corporate debtor thereby passing the ultimate cost of cleanup onto the public fisc. Similarly, *In re T.P. Long Chemical, Inc.*, 45 B.R. 278 (Bankr.N.D.Ohio 1985) is distinguishable because that case, unlike the present case, involved a direct claim by regulatory authorities for the cost of cleaning up a post-filing spill of a hazardous substance.

For the foregoing reasons, Burlington's claim should be denied administrative prior-

ity and the March 1, 1983 lease ordered avoided. Further proceedings shall be held to fix Burlington's general claim and to determine if Burlington should be allowed a priority claim for damage resulting from the debtor's post-filing operation. In this regard, the priority and taxation of the costs of a cleanup study is reserved based on the parties' representations at the November 26, 1985 hearing that a comprehensive study, including all land affected, is underway.