**In re MEDICAL ASSET MANAGE-MENT, INC., a/k/a Healthcare Professional Management, Debtor.**

**Cynthia Reed Eddy, Disbursing Agent and Heller Healthcare Finance, Inc., f/k/a HCFP Funding, Inc., Movants,**

**v.**

**National Union Fire Insurance Company of Pittsburgh, PA, Respondent.**

**Bankruptcy Nos. 98–24132–BM, 99–5270M.**

United States Bankruptcy Court, W.D. Pennsylvania.

March 24, 2000.

John A. Harris, Streich Lang, P.A., Phoenix, AZ, Kevin C. Hansen, Meyer Unkovic & Scott LLP, Pittsburgh, PA, for Heller Healthcare Finance.

Ellen M. Viakley, Manifesto & Donahoe, PC, Pittsburgh, PA, for Cynthia Reed Eddy, Disbursing Agent.

Joseph M. Smick, Peabody & Arnold, LLP, Boston, MA, for National Union Fire Insurance Company of Pittsburgh, PA.

William E. Kelleher, Jr., Tina L. Campo, Eckert, Seamans, Cherin & Mellott, LLC, Pittsburgh, PA, for Cura Capital Corporation.

Jeffrey A. Deller, Klett, Lieber, Rooney & Schorling, P.C., Pittsburgh, PA, Craig Blackstone, Seattle, WA, for Renton Family Practice and Manfred LaBand, M.D.

Roger S. Cunningham, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, PA, for Edward Dickstein, M.D.

Norman E. Gilkey, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, PA, for Dennis Calvert, John W. Regan, Michael A. Zaic, Gregg S. Soergel, Steven Harrison, Gary L. Steib, Various Former Officers and Directors of Debtor.

Paul Singer, Reed, Smith, Shaw & McClay LLP, Pittsburgh, PA, Glenn W. Merrick, Brega & Winter, P.C., Denver, CO, for Nicholas Besch, Jr., M.D., C. Jeffrey Kessler, M.D., P.C., Kenneth E. Petri, M.D., and P.C., and M.H. Melmed M.D., P.C., d/b/a Rocky Mountain Women's Healthcare.

Mark E. Freedlander, Sable, Pusateri, Rosen, Gordon & Adams, LLC Pittsburgh PA, Office of United States Trustee, Pittsburgh, PA.

BERNARD MARKOVITZ, Bankruptcy Judge.

### MEMORANDUM OPINION

#### Joint Motion To Approve Settlement and Reformation Agreement And For Related Injunctive Relief

Cynthia Reed Eddy, disbursing agent for reorganized debtor Medical Asset Management, Inc. ("MAM"), and Heller Healthcare Financial ("HHF"), a creditor in this bankruptcy case, have brought a joint motion to approve a settlement between themselves and National Union Fire Insurance Company ("NUFIC") involving a directors' and officers' insurance policy ("D & O policy") which NUFIC issued. We are advised in certain terms that the settlement may not be modified and that if each and every portion thereof is not approved the settlement may not be approved. Among other things, the proposed settlement would enjoin certain general unsecured creditors in this case and the directors and officers of MAM whom they have sued elsewhere from bringing any action against NUFIC, which is not a debtor in bankruptcy, with respect to the D & O policy.

Certain of the plaintiffs in these actions and certain directors and officers of MAM whom they have sued have objected to the motion to approve the settlement.

We will deny the motion for reasons set forth below.

### FACTS

MAM was in the business of purchasing certain assets of medical practices and of managing certain aspects of their operations.

Cynthia R. Eddy was appointed as MAM's disbursing agent pursuant to its confirmed chapter 11 plan of reorganization.

HHF is an alleged secured creditor of MAM which claims to have a perfected security interest in essentially all of MAM's assets, including the D & O policy.

NUFIC is an insurance company which issued the D & O policy that lies at the center of this matter.

MAM purchased a D & O policy from NUFIC in February of 1997. The policy period ran from February 3, 1997, to February 3, 1998. Its aggregate liability limit was $3,000,000.

The D & O policy provided two types of coverage: type A and type B.

Coverage A insured MAM's directors and officers against any loss they incur arising from claims first made against them during the policy period for wrongful acts they commit in their capacity as directors and officers of MAM, except when and to the extent that MAM indemnifies them. NUFIC was obligated to advance costs MAM'S directors and officers incurred in defending against the claim prior to its final disposition.

Coverage B insured MAM directly against any loss arising from any securities claim made against it during the policy period. It also insured MAM against any claim first made against its directors or officers for wrongful acts they commit in their capacity as directors and officers of MAM, but only when and to the extent that MAM first indemnifies the directors or officers. NUFIC was obligated to advance costs MAM incurred in defending against such claims prior to its final disposition.

At least eight lawsuits were filed in various other jurisdictions against directors and officers of MAM which are covered by the D & O policy. Judgments were entered in at least one of these lawsuits.

MAM filed a voluntary chapter 11 petition on May 28, 1998. Curiously, the D & O policy at issue here was not listed on the bankruptcy schedules as an asset of MAM's bankruptcy estate.

HHF commenced an adversary action in June of 1998 against MAM and more than

sixty medical defendants who allegedly had assigned their medical practice accounts receivable to MAM. HHF, which claims to have a perfected first priority security interest in these accounts receivable as well in virtually all of MAM's other assets including the above D & O policy, seeks to recover them to satisfy its purportedly secured claim in the approximate amount of $2,200,000.

As of May 5, 1999, MAM held approximately $175,000 in proceeds realized from liquidation of certain of its assets. In addition, HHF agreed to settlements with certain defendants in the above adversary action from which it is expected to realize approximately another $150,000.

MAM's modified liquidating chapter 11 plan provided, among other things, that funds held by the bankruptcy estate would not be distributed until at least $300,000 was in hand. The bankruptcy estate will retain the first $150,000 free and clear of any lien or interest of HHF for distribution to creditors other than MAM. The estate will distribute the remaining $150,000 to HHF on account of its allegedly secured claim.

HHF will receive eighty percent of all funds collected in excess of $300,000 until its claim is paid in full. The bankruptcy estate will retain the remaining twenty percent in excess of $300,000 free and clear of HHF's security interest. It will distribute one-half of this remaining twenty percent to creditors having allowed administrative claims and one-half to pre-petition general unsecured creditors having allowed claims. According to the plan, pre-petition general unsecured creditors are not expected to receive distribution in the full amount of their allowed claims.

Allowed unsecured insider claims will not receive any distribution under the plan unless and until all other classes of allowed claims, including pre-petition allowed claims of general unsecured creditors, are paid in full. According to the plan, unsecured insider claims are not expected to receive any distribution whatsoever.

The plan provides for appointment of an independent third party to administer the bankruptcy estate as of the plan's effective date and, among other things, to serve as disbursing agent for the above-mentioned funds in accordance with its provisions.

MAM's modified chapter 11 liquidating plan was confirmed on May 6, 1999, at which time the above disbursing agent was appointed.

The disbursing agent and HHF have brought the present motion to approve a settlement agreement with NUFIC and for injunctive relief. The settlement obviously was arrived at primarily as the result of negotiations between HHF and NUFIC. The disbursing agent was largely passive throughout the preliminary negotiations between HHF and NUFIC and thereafter played a role in arriving at the specifics of the agreement.

The parties to the settlement seek to "reform" the D & O policy as of its effective date to provide that the policy's liability limit is $1,5000,000 plus up to $200,000 in defense costs already incurred and paid through the effective date of the settlement agreement.

NUFIC will deliver to the disbursing agent as of the effective date a cash payment in the amount of $1,500,000 in full liquidation of the liability limit of the "reformed" D & O policy and in full settlement and satisfaction of any and all liability NUFIC has under the policy to MAM, to HHF, to debtor's estate, and to every party in the non-bankruptcy litigation.

Distribution of the settlement proceeds will take place in accordance with the above-described provisions of MAM's confirmed plan. Eighty percent of the proceeds—i.e, $1,200,00—will be distributed to HHF on the effective date. The disbursing agent will retain the remaining twenty percent—i.e., $300,000—free and clear of any interest of HHF for distribution to other creditors in accordance with provisions of the plan.

In addition, all of the parties in the ongoing non-bankruptcy litigation in other forums will be permanently enjoined from asserting any claim of any kind against NUFIC relating in any way to the D & O policy, with the exception of filing and prosecuting proofs of claim in the underlying bankruptcy case.

The disbursing agent, HHF, and NUFIC agreed to execute mutual releases of any and all claims, causes of action, or other rights which they could assert with respect to the policy and its proceeds. HHF's right to be paid from the bankruptcy estate in accordance with MAM's confirmed plan will not be affected.

The settlement agreement further provided that that it will not become effective and enforceable until, among other things, entry of the permanent injunction against all parties in the non-bankruptcy litigation. Inclusion of the above injunction is "material" to the agreement in that the parties thereto otherwise will not agree to enter into the settlement in its absence.

The disbursing agent and HHF brought a joint motion on November 4, 1999, to approve the above settlement and for related injunctive relief. Various parties to the non-bankruptcy litigation, including certain of MAM's former directors and officers, objected to the motion.

An evidentiary hearing on the motion and the various objections to it was held on February 15, 2000, at which time all interested parties were given an opportunity to participate and to offer evidence.

## DISCUSSION

■ An insurance policy is property of the bankruptcy estate for purposes of 11 U.S.C. § 541(a). *Estate of Lellock v. Prudential Insurance Company*, 811 F.2d 186, 189 (3d Cir.1987). As such, the motion now before us to approve the above settlement agreement qualifies as a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A) and/or (O).

We have authority to approve a proposed settlement or compromise in a bankruptcy case upon motion and after notice and a hearing. Federal Rule of Bankruptcy Procedure 9019(a).

■ We should consider the following factors when considering whether to approve as proposed settlement agreement: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation and the resulting expense, inconvenience and delay; and (4) the paramount interest of creditors. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir.1996).

■ Consideration of these four factors is not the end our inquiry. We may approve a settlement only if we conclude that it is "fair and equitable" *U.S. v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir.), *cert. denied*, 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984). The fairness to the settling parties of a proposed settlement agreement may not warrant its approval if the rights of others who are not parties to the settlement agreement are unduly prejudiced. We must further determine that "no one has been set apart for unfair treatment". *Cullen v. Riley (In re Masters Mates & Pilots Pension Plan)*, 957 F.2d 1020, 1026, 1031 (2d Cir.1992). Ignoring the effect of a proposed upon the rights of third parties "contravenes a basic notion of fairness". *In re AWECO*, 725 F.2d at 298.

Fairness and equity require in this context, for instance, that the rights of a senior creditor may not be adversely affected by a settlement agreement between a debtor and a junior creditor. *Continental Airlines, Inc. v. Air Line Pilots Association*, 907 F.2d 1500, 1508 (5th Cir.1990).

There is no compelling reason of which we are aware why we are limited to considering the effect of a proposed settlement agreement only on the rights of senior creditors. Its effect upon the rights of junior creditors (or a subset thereof), for instance, also may have to be considered in

certain situations when determining whether a proposed settlement is "fair and equitable" and therefore should be approved. This is especially true where, as here, the proposed settlement would enjoin certain objecting junior creditors who are not parties to the settlement from pursuing causes of action they may have against a party to the settlement other than debtor.

As statutory support for the requested injunction, MAM and HHF point to 11 U.S.C. § 105(a), which authorizes a bankruptcy court to issue any order that is required for "carrying out" the provisions of the Bankruptcy Code. As judicial authority they cite to, among other cases, *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir.1992), *cert. denied*, 506 U.S. 1088, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993) and *In re A.H. Robins Co., Inc.*, 880 F.2d 694, 701–02 (4th Cir.), *cert. denied*, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989).

Neither § 105(a) nor the cases· upon which movants rely supports in this instance issuance of the requested injunction.

■ The scope of § 105(a) is limited in that it only supplements powers specifically enumerated in the Bankruptcy Code. *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir.2000). It does not, however, empower a court to create substantive rights that otherwise are unavailable under the Bankruptcy Code. *In re Morristown & Erie Railroad Co.*, 885 F.2d 98, 100 (3d Cir.1989). We do not have "free-floating discretion" as a court of equity to rearrange rights in accordance with our idiosyncratic view of what is fair and just, however enlightened our view may be. *United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir.1992).

Section 105(a) does not, for instance, empower us to create a lien to secure payment of environmental cleanup costs if the contract obligating debtor to pay such costs makes no provision for such a lien.

*Southern Railway Co. v. Johnson Bronze Co. (In re Southern Bronze Co.)*, 758 F.2d 137, 141 (3rd Cir.1985). Unless its application is necessary to effectuate a successful reorganization or for some other similar purpose, § 105(a) does not authorize a bankruptcy court to direct allocation of tax payments as provided for in a plan of reorganization in contravention of 26 U.S.C. § 6672 and long-standing Internal Revenue Service procedure. *Pepperman*, 976 F.2d at 131. Section 105(a) also does not authorize us to compel Internal Revenue Service to reallocate non-trust fund tax payments made by a non-debtor corporation of which the debtor is a principal to trust funds taxes owed by the corporation. *Internal Revenue Service v. Kaplan*, 104 F.3d 589, 598 (3d Cir.1997).

Some courts have held, however, that § 105(a) authorizes a bankruptcy court in certain situations to enjoin pre-petition creditors of the bankruptcy estate from proceeding against a non-debtor third party where failure to enjoin them would jeopardize or adversely affect debtor's reorganization. *A.H. Robins v. Piccinin*, 788 F.2d 994, 1002 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *NLRB v. Superior Forwarding, Inc.*, 762 F.2d 695, 698 (8th Cir.1985).

We conclude for reasons set forth below that § 105(a) does not in this case warrant issuance of the requested injunction.

■ It should be noted preliminarily that the cases upon which movants primarily are distinguishable from the present case in that they dealt with confirmation of chapter 11 plans containing provisions permanently enjoining certain creditors from proceeding against parties other than the reorganized debtor. Debtor's plan in this case, which was confirmed some time ago, contains no such provision. The injunction movants seek here is contained in a post-confirmation settlement agreement to which the parties subject to the injunction are not parties.

As far as we are able to determine, the United States Court of Appeals for the Third Circuit has not addressed a situation like ours—i.e., where approval is sought of a post-confirmation settlement agreement which, among other things, enjoins certain junior creditors who are not parties to the settlement agreement from proceeding against a non-debtor party to the settlement agreement.

To the extent that the cases upon which movants rely (and others like them) bear on the present matter, they lead us to conclude that we should **not** approve the settlement agreement and issue the injunction upon which the parties to the settlement agreement, in particular NUFIC, insist [1].

It was a critical feature of the cases upon which movants primarily rely—i.e., *Drexel Burnham* and *A.H. Robins* —that the creditors who were enjoined from pursuing a non-debtor party received consideration in return for the prohibition. *In re Continental Airlines*, 203 F.3d at 212–13. (Parties liable along with debtor provided compensation to claimants in exchange for the release of their liability and thereby made reorganization possible.) The injunctions in these cases, we believe, would not have issued without such consideration.

Cases in which such an injunction did not issue provide additional support for the proposition that a non-debtor party who is protected by such an injunction must provide compensation to the enjoined party as a requirement for issuance of same. *See, e.g., Feld v. Zale Corp. (Matter of Zale Corp.)*, 62 F.3d 746, 761 (5th Cir.1995). (Bankruptcy court exceeded its powers under § 105 in issuing a permanent injunction because no alternative means was provided for enjoined creditors to recover.) ▮ *De minimis* compensation will not suffice for such an injunction to issue.

The consideration supplied must *reasonably* compensate enjoined creditors. *In re Continental Airlines*, 203 F.3d at 215 (It is necessary to provide reasonable compensation to a creditor who is forced to forego its claim against a non-debtor.)

The injunction requested in this instance cannot issue because the funds NUFIC has agreed to provide will not reasonably compensate objecting unsecured creditors.

HHF, a party to the settlement agreement and a movant here along with MAM, would be generously compensated for having to give up any rights it may have against NUFIC should it prevail in its non-bankruptcy lawsuits against certain of MAM's directors and officers. HHF would receive $1,200,000 (or 54.5 percent of its total claim) in return for being enjoined. This · settlement is certainly to HHF's advantage, as by no stretch of the legal imagination could they pursue a claim against this policy. Moreover, as a party to the settlement agreement, HHF has agreed to forego any rights its may have against NUFIC.

The matter is otherwise with respect to other parties to the non-bankruptcy litigation who have objected to the proposed settlement. They will not be reasonably compensated.

We previously noted that MAM's confirmed chapter 11 plan provides that the entire class of allowed general unsecured pre-petition claims will receive only ten percent—i.e., $150,000—of the proceeds of the proposed settlement. While the precise total amount of allowed general unsecured claims as of yet is undetermined, they undoubtedly will exceed $15,000,000 when all is said and done.

It follows that plaintiffs in the above non-bankruptcy litigation who also have allowed general unsecured claims would

---

1. It perhaps is worth noting that at least two Courts of Appeals have held that a permanent injunction contained in a proposed plan of reorganization is *per se* impermissible. See *American Hardwoods, Inc. v. Deutsche Credit Co.*, 885 F.2d 621, 626 (9th Cir.1989); *Landsing Diversified Properties II v. First National Bank & Trust of Tulsa (In re Western Real Estate Fund, Inc.)*, 922 F.2d 592, 601 (10th Cir.1990).

receive by way of distribution less than one percent of the settlement proceeds and far less than one percent of what they conceivably would receive from the D & O policy if they prevailed in their non-bankruptcy lawsuits against MAM's directors and officers. Limiting them to one percent or less of what they might otherwise recover under the D & O policy is not reasonable compensation for the injunction movants have requested. Such an outcome would be exceedingly unfair to these plaintiffs.

The practical effect of the requested injunction upon MAM's directors and officers, who are insiders with respect to MAM and are defendants in the above non-bankruptcy lawsuits, is even worse than it is for plaintiffs in the lawsuits. It is a virtual certainty that no distribution will be made to them. MAM's confirmed chapter 11 plan provides that unsecured insider claims will receive distribution only after all other classes of claims, including allowed general unsecured claims, are paid in full. It further states that unsecured insider claimants are not expected to receive any payment on their claims.

In other words, MAM's directors and officers almost certainly will receive no compensation at all, let alone fair and reasonable compensation, in exchange for having to forego any right they may have in the future to proceed against NUFIC under Coverage A of the D & O policy.

We conclude in light of the foregoing that we should not approve the above proposed settlement agreement in accordance with the powers vested in us by 11 U.S.C. § 105(a) because the settlement is not fair and equitable to certain parties to the non-bankruptcy litigation who are not parties to the settlement agreement and who have objected to it. They will not be fairly and reasonably compensated in exchange for having to forego any rights they may have to proceed against NUFIC arising out of the D & O policy.

Our resolution of this matter would be the same if we limited our consideration only to the above-enumerated four criteria for approving a proposed settlement agreement without considering whether it would be fair and equitable to parties in the non-bankruptcy litigation who are not also parties to the settlement agreement.[2]

To begin with, it is far from obvious what MAM's chances of succeeding would be if it were to indemnify its directors and officers in accordance with Coverage B under the D & O policy and then had to proceed against NUFIC to recover from it.

Without offering anything in support of its assertion, movants stated in a perfunctory manner that NUFIC contested coverage under the D & O policy. Apart from making vague allegations concerning fraud, movants offered no specifics that would allow us to determine whether NUFIC's position on the matter is colorable or is altogether unfounded. Instead of providing such information, movants offered wholly conclusory testimony by the disbursing agent that, in her estimation, MAM had at best "a 50–50 chance" of prevailing against NUFIC if it ultimately denied coverage under the D & O policy and MAM had to take legal action against NUFIC. Such testimony, without more, does not enable us to estimate MAM's chances of prevailing on the matter if it had to pursue the matter in litigation.

The second of the above factors clearly does not favor approving the proposed settlement. NUFIC is an insurance company with considerable assets. We see no reason to think that MAM would have difficul-

---

2. We question whether these four factors are even relevant here in determining whether to approve the proposed settlement. At the very least, MAM's directors and officers would seem to have a right of their own to take action directly against NUFIC if judgments are entered against them. It is questionable under such a scenario whether **debtor's** chances of prevailing in litigation against NUFIC and the effect such litigation would have on **debtor** and its creditors would have any bearing on whether we should approve the settlement.

ty collecting from NUFIC should MAM bring suit against it with respect to the issue of coverage under the D & O policy and ultimately prevail.

We also have no basis for concluding that any suit MAM brought against NUF-IC in this regard would be complex or would result in considerable expense, inconvenience or delay. We cannot so conclude for much the same reason as we could not assess MAM's chances of prevailing in such litigation against NUFIC. Because we know virtually nothing about the specifics of NUFIC'S allegations of fraud, we are not in a position to assess the anticipated complexity, cost, inconvenience, and delay that would result if MAM had to bring legal action against NUFIC. For all that we can tell, a lawsuit against NUFIC well might not be very complex, inconvenient, costly, or protracted.

Finally, we conclude that the benefit the proposed settlement would provide to the estate as a whole is mixed. While the proposed settlement would result in distribution of $1,200,000 to HHF, or approximately 54.5 percent of its claim, only $150,-000 would be available for distribution to general unsecured creditors, which would result in at most a one percent distribution to them. Any benefit to general unsecured creditors would be minimal at best.

Based on the record now before us, we are inclined to think that as much as $3,000,000, as opposed to $1,5000,000, very possibly will be realized for the benefit of certain creditors of the bankruptcy estate if we deny the proposed settlement agreement.

An appropriate order shall issue.

It is **SO ORDERED.**