06-5640-bk
*In re Board of Directors of Telecom Argentina, S.A.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: January 4, 2008                                    Decided: May 29, 2008)

Docket No. 06-5640-bk

_____

In re: BOARD OF DIRECTORS OF TELECOM ARGENTINA, S.A.

_____

THE ARGO FUND LTD.,

*Appellant,*

−v.−

BOARD OF DIRECTORS OF TELECOM ARGENTINA, S.A.,
*as foreign representative of* Telecom Argentina, S.A.,

*Appellee.*

_____

Before:      SOTOMAYOR and LIVINGSTON, *Circuit Judges*, and CARMAN, *Judge.*[*]

_____

        The Argo Fund Ltd. appeals from a decision by the United States District Court for the Southern District of New York (Buchwald, J.), which affirmed an order of the bankruptcy court (Lifland, B.J.), granting a petition by the Board of Directors of Telecom Argentina, S.A. ("Telecom") for recognition of an ancillary foreign insolvency proceeding under former section 304 of the Bankruptcy Code. We hold that the bankruptcy court did not abuse its discretion in confirming the petition and extending comity to the Argentine proceedings based on its finding that those proceedings did not violate U.S. public policy considerations manifest in the Trust Indenture Act of 1939, 15 U.S.C. § 77ppp(b), the best interests of the creditor test, 11 U.S.C. § 1129(a)(7), or the good-faith requirement in the Bankruptcy Code, 11 U.S.C. § 1129(a)(3). We further hold that the bankruptcy court did not abuse its discretion in denying additional discovery or expert testimony. Accordingly, we AFFIRM the judgments below.

_____

        [*] The Honorable Gregory W. Carman of the United States Court of International Trade, sitting by designation.

MICHAEL M. FAY (David S. Rosner, Kim Conroy, *on the brief*), Kasowitz, Benson, Torres & Friedman LLP, New York, New York, *for appellant*.

KAREN E. WAGNER (Jordan Leigh Santeramo, *on the brief*), Davis Polk & Wardwell, New York, New York, *for appellee*.

SOTOMAYOR, *Circuit Judge*:

This appeal arises out of the efforts of a major Argentine telecommunications company, Telecom Argentina, S.A., to renegotiate its financial obligations with multinational investors in the wake of a national economic crisis, and the challenge by one investor, appellant here, to the restructuring plan. Appellant The Argo Fund Ltd. ("Argo") appeals from a judgment, entered November 27, 2006, by the United States District Court for the Southern District of New York (Buchwald, J.), affirming a February 24, 2006 order of the bankruptcy court (Lifland, B.J.), that confirmed a petition by the Board of Directors of Telecom Argentina, S.A. ("Telecom") for recognition of an ancillary foreign proceeding pursuant to former section 304 of the Bankruptcy Code. *See* 11 U.S.C. § 304, *repealed on* April 20, 2005, *repeal effective* October 17, 2005 ("section 304"). We hold that the bankruptcy court did not abuse its discretion in confirming the petition recognizing the restructuring plan and extending comity to the Argentine proceedings based on its finding that those proceedings did not violate U.S. public policy considerations manifest in the Trust Indenture Act of 1939, 15 U.S.C. § 77ppp(b), the best interests of the creditor test, 11 U.S.C. § 1129(a)(7), or the good-faith requirement in the Bankruptcy Code, 11 U.S.C. § 1129(a)(3). We further conclude that the bankruptcy court did not abuse its discretion in denying additional discovery or expert testimony. Accordingly, we AFFIRM the judgments below.

2

**BACKGROUND**

In late 2001, Argentina entered a deep recession. As economic conditions worsened, Argentina devalued its currency and permitted it to float freely after years of being pegged to the U.S. dollar at a fixed rate. *See* Michelle Wallin & Matt Moffett, *Argentina Says It Is Devaluing Its Peso By 29%*, Wall St. J., Jan. 7, 2002, at A3. During this time, Argentina also promulgated laws that converted the rates of services charged to customers and due to Telecom into pesos, which had significantly declined in value. *See* Sara Silver, *Telecom Argentina Defaults on $3.3bn of Debt Repayments*, Fin. Times, Apr. 3, 2002, at A17. In addition, the government prohibited increases in public service rates or indexing of tariffs to foreign currencies. As a result, Telecom was paid by customers in rapidly devaluing pesos, was prohibited from adjusting its rates, yet was required to pay its existing foreign financial debt obligations in foreign currency.

Telecom's Liquidity Crisis

The confluence of these events triggered a liquidity crisis for Telecom, which held approximately US$ 3.3 billion in outstanding unsecured debt ("Old Debt"). On April 2, 2002, after consulting with its financial advisors, Telecom publicly informed investors that it would suspend principal payments on all of its Old Debt. *See id.* Telecom announced the suspension of its interest payments on the Old Debt shortly thereafter, on June 24, 2002.

From approximately June 2002 through January 2004, Telecom negotiated with its creditors through an *ad hoc* committee in an attempt to restructure the Old Debt by consent, but failed to finalize a mutually acceptable proposal. On January 9, 2004, Telecom announced its own restructuring proposal and its intention to conduct the restructuring as an *acuerdo preventivo*

*extrajudicial* ("APE") under Argentina's Insolvency Law.  *See* Insolvency and Bankruptcy Law

No. 24.522 (public translation) ("Insolvency Law").  The laws governing an APE were revised in

2002, largely in response to the Argentine economic crisis.[1]  As revised, the APE permits a

debtor that suspends its payments or has financial difficulties to seek court approval of a

privately negotiated, majority-approved restructuring plan and thereby make the plan binding on

all creditors.  Insolvency Law arts. 69, 72.  Over the next several months, in consultation with its

creditors, Telecom made several amendments to the proposed APE plan and finalized its

solicitation statement seeking creditor consent.  The final proposal provided creditors with three

---

[1]  Telecom's expert on Argentine Insolvency Law explained the APE proceeding in a declaration to the bankruptcy court:

> In May 2002, the Argentine Insolvency Law was amended to . . . recognize that a privately negotiated debt restructuring plan (an "APE") supported by a qualified majority of a debtor's unsecured creditors that consented to such plan prior to its filing with a competent court, if confirmed by such court upon completion of the related APE Proceeding, would become binding upon the remaining holders of the unsecured debt affected by such restructuring that did not consent to the plan, including on minority holders of such debt that objected to the terms of such agreement in the APE Proceeding . . . . The May 2002 Amendment rendered the APE Proceeding an effective means of solving conflicts between debtors and creditors by making a judicially confirmed APE binding on all creditors affected by such APE, while avoiding the expenses of the more cumbersome and time-consuming *concurso preventivo* proceeding [which occurs after a debtor files with a court for relief].

Decl. of Javier Lorente, dated Sept. 12, 2005, at ¶ 7.  Argo's expert detailed some of the same general features of the APE.  *See* Decl. of Julio Cesar Rivera, dated Oct. 11, 2005, at ¶ 7 ("[A]n APE is a contract . . . entered into between a debtor and its creditors outside the judicial process . . . .  In 2002, [the law] was enacted to permit a debtor to bind non-parties to an APE agreement.  [The law] permits a debtor to present an APE agreement to a court for 'confirmation' . . . if it has obtained the support of holders of at least 2/3 of the principal amount of the affected debt and at least 51% of the affected creditors *per capita*." (internal citations omitted)).

4

options:[2]

- Option A: New Notes due 2014 (the "Series A notes"), to be issued in an amount equal to the principal face amount of the outstanding notes, plus an adjustment for a portion of the unpaid interest; or

- Option B: New Notes due 2011 (the "Series B notes"), which were to have a shorter maturity and higher interest rate, but which were to be issued at a discount of approximately 5.5% to the principal face amount and adjustment for a portion of the unpaid interest. (Creditors selecting Option B agreed to have up to 37.5% of their debt allocated into the cash option described below.); or

- Option C: A cash payment in equivalent U.S. dollars at a price not greater than 850 nor less than 740, to be determined pursuant to a "Modified Dutch Auction."[3]

At the expiration of the APE solicitation period, Telecom announced that it had received the consent of the holders of 94.4% in principal face amount of the outstanding notes, or 82.2% of the number of noteholders.

APE Approval in Argentine Court and Cancellation of (Most of) the Old Debt

Telecom submitted the proposed APE plan to an Argentine commercial court for approval on October 21, 2004. Pursuant to the court's order, Telecom held a noteholders' meeting (after providing the required notice) at which all noteholders participating in person or by proxy cast ballots in favor of the plan. Argo, a creditor of Telecom that now owns over US$

---

[2] The description of these options was provided by Pablo Caride, Finance Director of Telecom, in his declaration to the bankruptcy court. *See* Decl. of Pablo Caride, dated Dec. 7, 2005, at ¶ 32. Argo does not dispute Caride's summary of the options, and in fact cites to Caride's declaration in its brief. A more detailed description of the options is provided in Telecom's solicitation statement, dated June 22, 2004.

[3] According to Caride, "[d]epending on their elections, creditors would be paid amounts ranging from 80.3% (for creditors electing the cash option) to 100% (for creditors electing to receive Series A notes) of the outstanding principal face amount of their claims plus an adjustment factor that represented a portion of unpaid interest."

5

35 million in Telecom notes,[4] did not participate.

The Argentine court accepted the APE as having been validly approved by the requisite majorities under Argentine law. Creditors were then given the opportunity to file objections to the plan, and four objections were raised.[5] Argo again did not participate in the objection process. The Argentine court rejected the objections and approved the APE plan by order of May 26, 2005. It concluded: "[T]aking into consideration the restructuring sought as a means of turning around the business crisis, the elements provided to the case [sic] by the debtor and those required by the court, such proposal does not appear to be abusive, fraudulent or discriminatory in accordance with the applicable legal regulations."

While Telecom was conducting the court approval process and prior to closing on the restructuring, Argo contacted U.S. Bank, the indenture trustee for the Old Debt, and instructed it not to exchange Argo's notes. U.S. Bank agreed not to cancel or transfer Argo's notes, but stated that its agreement "is subject to actions that [it] may be legally required to take pursuant to or under force of law." In the course of its discussions with Telecom, U.S. Bank indicated that it would not take any action to cancel the Old Debt held by non-consenting creditors unless it received an order from a U.S. court directing it to do so. Telecom asked U.S. Bank to cancel the

---

[4] Argo purchased its first notes on October 29, 2003, after Telecom had publicly defaulted on its obligations and commenced the informal restructuring process. Argo continued to buy notes both before and after creditor approval and initiation of the judicial phase of the APE process. Argo also continued to buy notes after the entry of the Argentine judgment.

[5] One of the creditors objected to the form of consideration to be provided to non-consenting creditors. Although this objection did not strictly fall within one of the grounds enumerated by the statute, *see* Insolvency Law art. 75, the court considered it and accommodated the creditor's concerns by ordering that, after approval of the APE, non-consenting creditors should be given the same choice among the three consideration options as if they had voted favorably for the APE.

remaining Old Debt for non-consenting creditors in accordance with the APE, but U.S. Bank

refused. The closing occurred on August 31, 2005. Approximately US$ 80 million in Old Debt

held by non-consenting creditors was not cancelled and was placed in a trust.

Proceedings in the United States

Pursuant to authorization by its Board of Directors, Telecom filed a verified petition (the

"Petition") commencing, on behalf of Telecom, a case ancillary to a foreign proceeding pursuant

to § 304 of the Bankruptcy Code. 11 U.S.C. § 304, *repealed by* Pub. L. No. 109-8, tit. VIII, sec.

802, 119 Stat. 23, 146 (2005). The Petition sought a judgment declaring that the Argentine

approval order and the APE should be given full force and effect in the United States, should be

binding on all creditors and their agents, and should result in the cancellation of the Old Debt.

Argo answered the Petition and moved to withdraw the reference to the bankruptcy court

pursuant to 28 U.S.C. § 157(d),[6] arguing that resolution of the Petition would require a

determination on the effect of Argo's rights under the Trust Indenture Act of 1939, 15 U.S.C.

§ 77ppp(b) ("TIA"). The United States District Court for the Southern District of New York

(Scheindlin, J.) denied Argo's motion on November 18, 2005, finding that the case neither

satisfied the criteria for mandatory withdrawal nor warranted discretionary withdrawal. *See In re*

*Bd. of Dirs. of Telecom Argentina S.A.*, No. 05 Civ. 8803, 2005 WL 3098934 (S.D.N.Y. Nov. 18,

2005).

Assured of its jurisdiction over the matter, the bankruptcy court resumed proceedings on

---

[6] Section 157(d) of Title 28 states that "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section . . . for cause shown. The district court shall . . . so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."

the Petition. On November 22, 2005, it granted Telecom's motion *in limine* to prevent the introduction of evidence regarding Telecom's financial eligibility to file an APE. The bankruptcy court then held a trial on December 12, 2005, during which the parties introduced the testimony of various experts regarding the Argentine Insolvency Law.

On February 24, 2006, Bankruptcy Judge Burton R. Lifland issued findings of fact and conclusions of law and issued an order granting Telecom's Petition. Judge Lifland concluded that the APE proceeding qualified as a "foreign proceeding" and that the Telecom APE was worthy of recognition under § 304, having satisfied the factors enumerated in § 304(c). *See In re Bd. of Dirs. of Telecom Argentina S.A.*, No. 05-17811, 2006 WL 686867 (Bankr. S.D.N.Y. Feb. 24, 2006).

Argo appealed, and the United States District Court for the Southern District of New York (Buchwald, J.) affirmed the bankruptcy court in a memorandum and order dated November 17, 2006. The district court found that the bankruptcy court did not err in denying Argo's objections to the APE on *res judicata* grounds, concluding that Argo could have raised its objections in Argentina's courts. The district court also rejected Argo's assertion that the APE proceedings violated U.S. public policy considerations manifest in the TIA and 11 U.S.C. § 1129(a)(3), (7) of the Bankruptcy Code, and it affirmed the bankruptcy court's determination that comity was appropriate in this case. *In re Bd. of Dirs. of Telecom Argentina S.A.*, No. 06 Civ. 2352, 2006 WL 3378687 (S.D.N.Y. Nov. 20, 2006). Argo timely filed an appeal with this Court.

**DISCUSSION**

When a district court sits as an appellate court reviewing a judgment of the bankruptcy court, the district court's decisions are subject to plenary review. *See In re Smith*, 507 F.3d 64,

71 (2d Cir. 2007).  We "review independently the factual findings and legal conclusions of the

bankruptcy court, accepting its findings of fact unless they are clearly erroneous and reviewing its

conclusions of law de novo."  *Id.*  In a case involving a petition for recognition of an ancillary

foreign proceeding, we review the bankruptcy court's analysis of the § 304(c) factors for abuse of

discretion.  *See In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001).  "To the extent that our decision

turns on questions of statutory interpretation, however, our review is *de novo*."  *Id.*

## I.      Section 304 and Recognition of Foreign Insolvency Proceedings

"American courts have long recognized the particular need to extend comity to foreign

bankruptcy proceedings."  *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d

Cir. 1987).  Congress enacted § 304 as part of the Bankruptcy Reform Act of 1978 to formalize a

process by which foreign debtors could bind creditors and "prevent piecemeal distribution of

assets."  *See id.* at 714; *see also Treco*, 240 F.3d at 156 ("The purpose of the section is to provide

a statutory mechanism through which United States courts may defer to and facilitate foreign

insolvency proceedings.").  Although § 304 was repealed by the Bankruptcy Abuse Prevention

and Consumer Protection Act of 2005, Pub. L. No. 109-8, tit. VIII, sec. 802, 119 Stat. 23, 146,

and replaced by the addition of a more comprehensive framework in chapter 15 to the

Bankruptcy Code,[7] § 304 controls this case because Telecom filed its Petition in bankruptcy court

---

[7] Chapter 15 "incorporate[s] the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of" fostering, *inter alia*, cooperation between U.S. courts and "courts and other competent authorities of foreign countries," "greater legal certainty for trade and investment," and "fair and efficient administration of cross-border insolvencies."  11 U.S.C. § 1501(a).  Chapter 15 dispenses with the explicit requirement that courts consider the five factors listed in § 304(c) as part of an application for recognition of foreign insolvency proceedings.

prior to the repeal effective date.[8]

Section 304 authorizes a "foreign representative" to commence a "case ancillary to a foreign proceeding" by filing a petition in bankruptcy court. 11 U.S.C. § 304(a). The bankruptcy court may issue a wide range of relief in connection with such ancillary cases, including "enjoin[ing] the commencement or continuation of" an action against "a debtor with respect to property involved in such foreign proceeding," "the enforcement of any judgment against the debtor with respect to such property," and "other appropriate relief." *Id*. § 304(b); *see also In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 348 (2d Cir. 1992) ("A bankruptcy court is given broad latitude in fashioning an appropriate remedy in a § 304 proceeding."). Argo does not challenge Telecom's eligibility to file the Petition through its Board of Directors. The only question at issue is whether the bankruptcy court properly analyzed the factors that govern whether to confirm a § 304 petition.

In evaluating a petition, the court "shall be guided by what will best assure an economical and expeditious administration of [the debtor's] estate," consistent with six factors enumerated in the statute. 11 U.S.C. § 304(c). Those factors are: (1) just treatment of all claimholders; (2) protection for U.S. claimholders against prejudice and inconvenience in claims processing; (3) prevention of preferential or fraudulent dispositions of property; (4) distribution of proceeds substantially in the order prescribed by U.S. bankruptcy law; (5) comity; and (6) if appropriate,

---

[8] Telecom filed its petition in bankruptcy court on September 12, 2005, less than 180 days after Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. *See* Pub. L. No. 109-8, § 1501, 119 Stat. 23, 216 (2005) (stating that, except as otherwise provided, "the amendments made by this Act shall not apply with respect to cases commenced under title 11, United States Code, before the effective date of this Act," which is 180 days after April 20, 2005). For purposes of brevity and clarity, we refer to "§ 304" rather than "former § 304" and we utilize the present tense in our analysis of the § 304(c) factors.

an opportunity for a "fresh start" if the foreign proceeding concerns an individual. *Id.* Courts are

to "conduct a case-by-case balancing of the[se] statutory factors." *Treco*, 240 F.3d at 154. Argo

argues that the bankruptcy court erroneously confirmed Telecom's Petition by misanalyzing two

of the § 304(c) factors—just treatment of all creditors and comity.[9]

    *a.*      *Just Treatment of Creditors*

Argo contends that the APE process does not provide for just treatment of creditors

because it allows for "only limited objections and limited recourse against a majority-approved

APE." The "just treatment" factor is satisfied upon a showing that the applicable law "provides

for a comprehensive procedure for the orderly and equitable distribution of [the debtor]'s assets

---

[9] Argo does not meaningfully challenge the bankruptcy court's evaluation of the second, third, and fourth § 304(c) factors. Argo has offered no evidence that it suffered "prejudice or inconvenience" in claims-processing; indeed, as the bankruptcy court found, Telecom and the Argentine court took multiple steps to ensure notice and ease of participation for its multinational investors. In any event, the second factor "is given minimal weight and rarely, if ever, will be dispositive as a ground for disallowing relief." Collier on Bankruptcy P. 304.08 (15th ed. 2007). The third factor is satisfied by Argentine law, which provides explicit protection against fraud and preferential treatment. *See* Insolvency Law art. 56 ("Any benefits granted to the creditors beyond what is established in the [agreement] for each category are absolutely null and void."); art. 60 (stating that grounds for nullification of approved plan are "the existence of fraud aimed at exaggerating liabilities, acknowledging or simulating non-existing or fraudulently-created preferences, and concealing or exaggerating assets"); art. 75 (listing as grounds for objection to approval of an APE "omission or exaggeration of the assets or liabilities"). The Argentine court also expressly examined the APE for evidence of fraud.

    The fourth factor looks to whether the priority rules of the foreign jurisdiction are "substantially in accordance with" U.S. priority rules. 11 U.S.C. § 304(c)(4). Courts have repeatedly recognized that to satisfy this factor, "the priority rules of a foreign jurisdiction need not be identical to those of the United States." *Treco*, 240 F.3d at 158; *see also In re Manning*, 236 B.R. 14, 25 (9th Cir. B.A.P. 1999) ("[S]ection 304(c)(4) does not command that the distributive scheme wholly replicate ours." (internal quotation marks omitted)); *In re Schimmelpenninck*, 183 F.3d 347, 364 (5th Cir. 1999) (same). Although Argo contends that Argentina's Insolvency Law lacks creditor protections that U.S. bankruptcy law provides, it does not suggest that the relevant differences relate to priority rules. Thus, Argo has offered no evidence to suggest that the fourth § 304(c) factor weighs against confirmation of Telecom's Petition.

among all of its creditors." *Treco*, 240 F.3d at 158 (internal quotation marks omitted); *see also* 2 Collier on Bankruptcy § 304.08 (15th ed. 2007) ("Usually, an ancillary petition furthers the goals of just treatment of all creditors by preventing piecemeal dismemberment and by centralizing administration of the debtor's affairs and assets."). Instances in which a court has held that the foreign proceeding does not satisfy this factor include when the proceeding fails to provide creditors "access to information and an opportunity to be heard in a meaningful manner," which are "[f]undamental requisites of due process," *In re Hourani*, 180 B.R. 58, 67 (Bankr. S.D.N.Y. 1995), or when the proceeding would not recognize a creditor as a claimholder, *see In re Papeleras Reunidas, S.A.*, 92 B.R. 584, 590 (Bankr. E.D.N.Y. 1988) ("By reason of its not having been given notice of the Spanish proceeding, Adams was not recognized as a creditor, thus depriving it of the opportunity to participate in the proceeding, prejudicial to its rights.").

Here, the APE plan provided for an orderly, centralized administration of Telecom's debt restructuring. Argo had notice of the APE proceedings throughout the process—from Telecom's filing of an initial registration statement with the SEC describing the APE proposal; to distributing of the final solicitation statement; to convening a noteholders' meeting pursuant to an order of the Argentine court; to publishing notices of approval by the Argentine court informing creditors of their right to object to approval of the APE. As further evidence that Argo was put on notice of this process, Argo sent several letters to U.S. Bank—but, notably, without first raising its issues with Telecom or the Argentine court—indicating its disagreement with and its refusal to be bound by the APE. Throughout, Argo had the opportunity to object to the terms of the proposed plan, to vote on the plan, and then to submit objections—subject to the parties'

12

dispute about the scope of permissible objections[10]—to the Argentine court. In addition, Article 52(4) of the Insolvency Law prohibits courts from approving an abusive plan in the context of *acuerdo preventivo* proceedings. Both parties' experts testified that Argentine courts apply this prohibition in the context of an APE proceeding, although there is some uncertainty about whether courts are required or simply permitted to conduct an abusiveness inquiry.[11] In any event, the Argentine court in this proceeding *did* consider whether the plan was abusive, fraudulent, or discriminatory. It ruled that the APE was not, and did so only after directing that non-consenting creditors should get an additional opportunity to select among their consideration options after the APE was approved. Based on this evidence, the bankruptcy court did not abuse its discretion by finding that this APE proceeding comported with due process and ensured just treatment of creditors.

b.   *Comity*

"[C]omity is the ultimate consideration in determining whether to provide relief under § 304," although it does not "automatically override the other specified factors." *Treco*, 240 F.3d at 156. The Supreme Court has defined comity as: "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due

---

[10] Even accepting, as Argo contends, that Argentine law permits only a few types of objections to an APE plan, *see* Insolvency Law art. 75, that limitation alone does not demonstrate "unjust treatment of claimholders," particularly when, as in this case, the Argentine court considered on the merits objections beyond the specified statutory scope.

[11] Article 76 indicates that an approved APE "produces the effects set forth in Article 56 and remains subject to the provisions of Chapters III, IV, and V of Chapter V [sic] of Title II of this Law." The original Spanish version of the law, unlike the English translation, clarifies that only *Sections* III, IV, and V of Chapter V are expressly applied to an APE plan. These sections do not include Article 52, which prohibits abusive plans. Thus, if Article 52's prohibition on abuse applies to the court's examination of an APE plan, it must be indirectly, as a matter of general principles in Argentine insolvency law.

regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 143 (1895). Comity is generally appropriate where the foreign "proceedings do not violate the laws or public policy of the United States and if the foreign court abides by fundamental standards of procedural fairness." *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999) (internal quotation marks and citation omitted).

Argo argues that the bankruptcy court erred in granting the Petition because the APE proceeding violates public policy and therefore is not entitled to comity. Argo identifies three provisions in the Bankruptcy Code that it asserts are inconsistent with the APE proceeding: (1) protection of bondholders' rights under § 316(b) of the TIA; (2) the best interests of the creditor requirement under 11 U.S.C. § 1129(a)(7); and (3) the good-faith requirement under 11 U.S.C. § 1129(a)(3).

### 1. Trust Indenture Act

The Trust Indenture Act protects the holder of a bond issued under a qualified indenture from majority-imposed impairment of its rights. It provides that "the right of any holder of any indenture security to receive payment of the principal of and interest on such indenture security . . . shall not be impaired or affected without the consent of such holder." 15 U.S.C. § 77ppp(b). As Argo acknowledges in its brief, however, "[o]f course, the TIA cannot prevent the reorganization of a debtor under U.S. bankruptcy laws." Indeed, "[i]t is self-evident that Section 316(b) could not have been intended to impair the capacity of a debtor and its creditors to restructure debt in the context of bankruptcy," and "[t]he cases have uniformly recognized that reorganization proceedings in Chapter 11 are not within the purview of TIA Section 316(b)." *In re Delta Air Lines, Inc.*, 370 B.R. 537, 550 (Bankr. S.D.N.Y. 2007), *aff'd*

14

374 B.R. 516 (S.D.N.Y. 2007); *see also In re Bd. of Dirs. of Multicanal S.A.*, 307 B.R. 384, 388 (Bankr. S.D.N.Y. 2004) ("*Multicanal I*") (observing that a creditor "conceded, as it must, that the rights of holders to principal and interest on bonds issued under a TIA-qualified indenture can be impaired by bankruptcy proceedings").  Because, as Argo concedes, TIA protected bonds are subject to restructuring under the United States' bankruptcy law, and because Section 304 is part of our bankruptcy law, a bankruptcy court may grant enforcement of foreign insolvency proceedings that restructure TIA protected bonds so long as recognition of those proceedings is otherwise valid under Section 304.[12]  Such a holding would turn the principle of comity on its head and would fail to promote "a friendly intercourse between the sovereignties" particularly necessary in bankruptcy proceedings.  *Hilton*, 159 U.S. at 165 (internal quotation marks omitted).

2.      Best Interests of the Creditor and Good Faith

To avoid the preceding conclusion, Argo asserts that the Bankruptcy Code provides "TIA-protected creditors at least two avenues for challenging a . . . debtor's efforts to skirt the mandatory provisions of Section 316(b)" of the TIA: the best interests of the creditor analysis, *see* 11 U.S.C. § 1129(a)(7), and the good-faith requirement, *see id.* § 1129(a)(3).  In essence,

---

[12] In *Multicanal I*, the bankruptcy court explained the problematic implication of adopting the rigid reading of TIA § 316(b) advanced by Argo:

> [T]here is no reason to accept [the] contention that it would be good policy to exalt bondholders' individual rights over recognition of foreign insolvency proceedings. [Such a] formulation . . . would mean that foreign companies that issued debt in the United States under a qualified indenture could never reorganize under the laws of their home jurisdiction unless their nation adopted a reorganization statute identical to ours or unless the foreign entity filed a full U.S. Chapter 11 proceeding, with all of its attendant expense.  Section 304 was adopted to recognize and enforce foreign proceedings where appropriate, not to require adoption of U.S. law.

307 B.R. at 393.

Argo suggests that nonconsensual reorganization under U.S. bankruptcy law is permissible notwithstanding TIA § 316(b) because of these protections; in their absence, approval of the reorganization would be improper. Argo then argues that Argentine law does not provide these protections, and therefore the APE is not entitled to comity.

Section 1129(a)(7), commonly known as the "best interest of creditors" requirement, establishes that a creditor must receive no less in a reorganization than it would in liquidation. *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988). Argo's position is that unless the foreign proceeding provides for an equivalent "best interests" analysis for non-consenting creditors, the foreign reorganization is not entitled to comity.

Comity, however, does not require that foreign proceedings afford a creditor identical protections as under U.S. bankruptcy law. *See Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993) (explaining that "there is no requirement that Australian liquidation proceedings be identical to United States bankruptcy proceedings" to afford comity); *see also In re Bd. of Dirs. of Multicanal S.A.*, 314 B.R. 486, 506 (Bankr. S.D.N.Y. 2004) ("*Multicanal II*") ("There is no requirement that a foreign proceeding incorporate the conditions to confirmation set forth in § 1129 of the U.S. Bankruptcy Code."). Specifically, we agree with the conclusion of the bankruptcy court in *In re Garcia Avila*, 296 B.R. 95 (Bankr. S.D.N.Y. 2003), that the absence of a "best interests" test does not prevent recognition of ancillary foreign proceedings under § 304. *Id.* at 112-13. Argo's argument amounts to a claim that "the Court should not grant comity because [creditors] may receive a smaller distribution on their unsecured claim in [the foreign jurisdiction] than they would receive . . . under United States law." *Id.* at 112. But so long as the other § 304(c) factors are satisfied, the statute does not require that the amount of a distribution in a foreign insolvency proceeding be equal to the hypothetical amount the creditor

16

would have received in a proceeding under U.S. law.[13]

In this case, although Telecom was not required to prepare a liquidation analysis, which § 1129(a)(7) requires in a domestic proceeding, the APE provided creditors with options to receive from 80 to 100% of the outstanding principal face amount of their claims, plus an adjustment factor for unpaid interest. Telecom's expert testified that this was "the best consideration I have ever seen in an APE." The particular circumstances of this case and the terms of the restructuring plan clearly support the conclusion that the bankruptcy court did not abuse its discretion in rejecting Argo's contention that § 1129(a)(7) should prohibit a grant of comity.

Argo's additional contention that the proceedings were not undertaken "in good faith" and would therefore fail to satisfy one of the prerequisites for confirmation of a Chapter 11 plan, *see* 11 U.S.C. § 1129(a)(3), likewise fails. Under § 1129(a)(3), a plan will be found in good faith if it "was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *In re Koelbl*, 751 F.2d 137, 139 (2d Cir. 1984) (internal quotations omitted); *see also Kane*, 843 F.2d at 649 (affirming confirmation of a Chapter 11 plan where the company "honestly believed that it was in need of reorganization and that the Plan was negotiated and proposed with the intention of accomplishing a successful reorganization"). A "finding of good faith will not be overturned unless the opponent of the plan can show that the

---

[13] We recognize, however, that the fairness concerns underlying the "best interests" test reflect important policy considerations in the Bankruptcy Code, and nothing in our opinion should be read to foreclose the possibility of a court refusing to grant comity to a proceeding that is plainly repugnant to those considerations. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987) ("Under general principles of comity as well as the specific provisions of section 304, federal courts will recognize foreign bankruptcy proceedings provided the foreign laws comport with due process and fairly treat claims of local creditors.").

finding was clearly erroneous." *Koelbl*, 751 F.2d at 139.

Argo claims that Telecom's APE proceeding was conducted in bad faith because Telecom "could have paid all of its debts in full, and thus, is using the APE law not to promote a necessary restructuring but, instead, to enrich its shareholders." The bankruptcy court refused to permit Argo to present expert testimony on Telecom's financial health at the time of the APE. It noted that the Argentine court found that Telecom "met the financial eligibility requirements to file an APE" and that finding "was not contested by Argo in the Argentine Court and may not be collaterally attacked by Argo in this Court." We need not decide whether the bankruptcy court correctly held that Argo's objections to the APE based on Telecom's financial health were barred by *res judicata* because the bankruptcy court nonetheless considered Telecom's financial status at the time of the proposed restructuring, such that it could make a finding of good faith. The court noted that Telecom faced "a severe liquidity crisis" that triggered the initiation of restructuring efforts, along with the suspension of principal and interest payments, in 2002. The court also found that the Insolvency Law does not require a party to be insolvent before commencing APE proceedings; it is enough that the debtor is experiencing "general financial or economic difficulties."[14] The record attests to the financial difficulty that Telecom experienced as the result of the Argentine economic crisis and that prompted its restructuring efforts.[15] The Insolvency Law permits a debtor to restructure its obligations in such circumstances, so long as it receives the requisite consent of its creditors and satisfies the other conditions for APE approval.

---

[14] Argo concedes the "undeniable proposition" that neither Argentine nor U.S. bankruptcy law requires a party to be insolvent before entering into a voluntary reorganization.

[15] Notably, although the Insolvency Law requires only that the debtor has suspended its payments *or* is experiencing economic or financial difficulties, Insolvency Law art. 69, Telecom satisfied both criteria.

18

Tellingly, the APE met with overwhelming approval by Telecom's creditors. Argo has offered no evidence that Telecom abused the APE process or entered it in a bad faith attempt to press a debt restructuring it knew was unnecessary. Accordingly, the bankruptcy court did not abuse its discretion by concluding that Telecom proposed the APE in good faith and that confirmation of Telecom's Petition would not undermine the public policy considerations in § 1129(a)(3).

In sum, we conclude, based on the specific facts of this case and in light of all the circumstances, *see Treco*, 240 F.3d at 156, that the bankruptcy court did not abuse its discretion in confirming Telecom's Petition and recognizing the APE. We reach this conclusion mindful that § 304 review must be "guided by what will best assure an economical and expeditious administration" of insolvency proceedings. 11 U.S.C. § 304(c). As previously noted, Argo did not attempt to raise any objections to the proposed APE before the Argentine court. Argo's challenge to the APE in the United States, after refusing to participate even by objection in the Argentine proceedings and after Telecom closed on the APE, is contrary to our longstanding recognition that foreign courts have an interest in conducting insolvency proceedings concerning their own domestic business entities, *see Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985), and that "creditors of an insolvent foreign corporation may be required to assert their claims against a foreign bankrupt before a duly convened bankruptcy tribunal," *id.* at 458-59; *see also Canada S. Ry. v. Gebhard*, 109 U.S. 527, 537 (1883) ("[E]very person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts . . . .").

### III.  Denial of Argo's Expert and Additional Discovery

We review for abuse of discretion the bankruptcy court's refusal to allow the testimony of

one of Argo's experts and the preclusion of additional discovery on the financial status of Telecom. *See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004); *In re DG Acquisition Corp.*, 151 F.3d 75, 79 (2d Cir. 1998). "The exclusion of a proposed expert witness will not constitute an abuse of discretion unless it is manifestly erroneous." *Wills*, 379 F.3d at 41 (internal quotation marks omitted).

The bankruptcy court granted Telecom's motion *in limine* to exclude from admission at trial the testimony of one of Argo's proposed experts, Professor Israel Shaked, regarding the financial status of Telecom. After a hearing on the motion, the court explained that it considered Telecom's financial status at the time of the APE "irrelevant to the issues that are before [the court]," namely, comity.[16] In addition, the bankruptcy court stated that Argo had the opportunity to present a similar objection in Argentine courts by charging the APE proceeding as abusive, and that it would not allow Argo to present that objection after strategically refusing to make it in Argentina.

The discovery request, which sought documents relating to Telecom's financial health, was denied in part for substantially the same reasons. The bankruptcy court stated that additional discovery on Telecom's financial status was not relevant to the issue of comity pending before it on the § 304 petition. Notably, however, the bankruptcy court did not deny discovery altogether. It permitted both sides the opportunity to depose witnesses that it intended to, and was permitted to, call at trial and it ordered both sides to "make available for inspection and copying any

---

[16] Nevertheless, as explained earlier, the bankruptcy court did not altogether disregard Telecom's financial status, as it recognized that the Argentine court found that Telecom "met the financial eligibility requirements to file an APE," initiated the APE as "a means of turning around the business crisis," and proposed an APE that "does not appear to be abusive, fraudulent, or discriminatory."

documents that Messrs. Rivera and Lorente [the experts on Argentine Insolvency Law] may have relied upon, or may rely upon before trial, in formulating their opinions." Although Telecom's financial status may not be "irrelevant" to the bankruptcy court's comity analysis, as we discuss above, it was not "manifestly erroneous" for the bankruptcy court to deny Argo's request to permit testimony by a financial valuation expert and additional discovery. The bankruptcy court reasonably concluded that it had sufficient testimonial and documentary evidence from both parties to evaluate whether Telecom properly entered the APE process and whether to confirm the Petition.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgments of the district court and the bankruptcy court.