In re PARMALAT FINANZIARA S.p.A., et al., Debtors in a Foreign Proceeding.

ABN Amro Bank N.V., Appellant,

v.

Parmalat Finanziara S.p.A., Appellees.

Bankruptcy No. 04–14268(RDD).

No. 07 Civ. 7413(PKC).

United States District Court, S.D. New York.

Sept. 30, 2008.

Christopher Joseph Caruso, Moses & Singer LLP, New York, NY, for debtor.

Marcia Landweber Goldstein, Weil, Gotshal & Manges LLP, New York, NY, for appellee.

## MEMORANDUM AND ORDER

P. KEVIN CASTEL, District Judge.

ABN AMRO Bank N.V. ("ABN") is the holder of a promissory note in the principal amount of $9,999,999.91 guaranteed by Parmalat S.p.A. When the note remained unpaid at maturity, ABN commenced a state court proceeding in New York against Parmalat S.p.A., as guarantor.

Prior to the institution of the state court proceeding, Parmalat Finanziaria S.p.A. and Parmalat S.p.A. (collectively, "Parmalat") filed insolvency proceedings in Parma, Italy. Parmalat commenced proceedings in the United States Bankruptcy Court for this District and obtained an order enjoining ABN from commencing or continuing any legal proceeding in the United States against Parmalat or any of its property or proceeds thereof by reason of the pending insolvency proceedings. 11 U.S.C. § 304 (repealed 2005). A permanent injunction was entered by the Bankruptcy Court (Robert D. Drain, U.S.B.J.) on July 20, 2007. ABN has timely filed an appeal from the July 20 Order.

For the reasons discussed below, the July 20 Order is affirmed.

*Background*

### A. *The Note and the New York Action*

On March 27, 2003, Wishaw Trading Company S.A. ("Wishaw"), a corporation organized under the laws of Uruguay with its principal place of business in Milan, Italy, executed a promissory note in favor of Archer Daniels Midland Company ("ADM") in the amount of $9,999,999.91 (the "Note"). Contemporaneously, Parmalat S.p.A. executed a guarantee of the Note (the "Guarantee"). The Guarantee was signed by Calisto Tanzi, the Chairman of Parmalat S.p.A., and a representative of Banca Intesa S.p.A. certified the signature as that of a person "duly empowered to contractually obligate Parmalat S.p.A., (Italy)." The Note and Guarantee state that they are to be governed by New York law. Two signators acting on behalf of ADM endorsed the Note as payable to the order of ABN.

When Wishaw failed to pay the amount due under the Note by the maturity date, March 19, 2004, ABN commenced a state court action in New York against Wishaw, as the obligor, and Parmalat S.p.A., as the guarantor. *ABN AMRO Bank N.V. v. Wishaw Trading S.A.,* Index No. 04/600787, Supreme Court, New York County (commenced March 22, 2004).

### B. *The Institution of Proceedings in Parma and in this District*

Prior to the institution of the New York action, on December 24, 2003, Parmalat had commenced judicial proceedings in Parma, Italy. The Parma Court declared Parmalat insolvent and Italy's Minister of Productive Activities appointed Dr. Enrico Bondi as Extraordinary Administrator.

On June 22, 2004, Parmalat also commenced proceedings under 11 U.S.C. § 304 in the Bankruptcy Court and sought entry of a preliminary injunction against ABN continuing the state court action against Parmalat S.p.A. and Wishaw, which was 16% owned by Parmalat. ABN objected to the entry of an injunction, focusing principally on its position that no order ought to extend to Wishaw, a non-party to the Italian insolvency proceedings. On July 2, 2004, the Bankruptcy Court entered a preliminary injunction (subsequently extended through May 4, 2007) which enjoined the state court action as against Parmalat S.p.A. but not as to Wishaw.[1] Thereafter, Parmalat sought a permanent injunction which would limit ABN's remedies to the claims process in the Italian insolvency proceeding. In opposition to the entry of permanent injunction, ABN argued that "[t]he claims process in the Italian proceeding is prejudicial to ABN and other similarly situated creditors and does not provide for the just treatment of credi-

---

1. Judgment was subsequently entered against Wishaw on April 5, 2005 in the sum of $11,255,889.91, which included principal and interest. The judgment had not been satisfied as of the date this appeal was filed.

tors." (Mar. 30, 2007 Supp. Obj. of ABN at 1.) ABN asserted that "[w]ith equal arrogance and arbitrariness, Parmalat and the Italian Court have repeatedly denied ABN the opportunity to prove the obvious—namely, that the [Note and Guarantee] ... were indeed executed on March 27, 2003." (Apr. 25, 2007 ABN Sur–Reply at 1–2.) Specifically, ABN objected to the Italian Court's application of the *data certa* statute which, it argued, required a particular type and quality of proof as to the date of execution of an obligation.[2] ABN argued that the application of the statute to an obligation with a New York choice of law provision is repugnant to the law of the United States and justified the denial of comity to the Italian proceedings.

After a hearing held on June 21, 2007, the Bankruptcy Court issued a bench ruling, subsequently modified, granting the relief requested by Parmalat. The Bankruptcy Court found "that, on a general basis, the foreign proceedings in Parma provide for a comprehensive procedure for the orderly and equitable distribution of the foreign debtors' assets and the just treatment of creditors." (Modified Bench Ruling at 6.) Specifically, with regard to ABN's argument that the application of the doctrine of *data certa* to a contract that incorporated New York law was repugnant to United States law, the Bankruptcy Court referred to the catch-all provision in the Italian statute which allowed alternate means of proof. (*Id.* at 8.) Arti-

cle 2704 (the text of which is quoted in full at footnote 2) provides that "[t]he date of a private writing in which the signature has not been authenticated is not certain and cannot be asserted against third persons, except ... from the date on which other circumstances occur which establish with equal certainty that the writing was drawn up previously." The Bankruptcy Court concluded that "the *data certa* law has been applied by the Italian courts in a way that is consistent with U.S. notions of due process and fundamental fairness." (*Id.* at 9.) The court noted the availability of an appeal under Italian law. (*Id.*) On July 20, 2007 the Bankruptcy Court entered the Order from which an appeal was timely taken.

### C. Standard of Review

■■■ A bankruptcy court's analysis of the factors under section 304 of the Bankruptcy Code is reviewed for abuse of discretion. *Argo Fund, Ltd. v. Bd. of Dirs. of Telecom Argentina, S.A.,* 528 F.3d 162, 169 (2d Cir.2008) (citing *In re Treco,* 240 F.3d 148, 155 (2d Cir.2001)). A bankruptcy court's factual findings are accepted unless clearly erroneous and its legal conclusions are reviewed *de novo. Id.; see also Bondi v. Capital & Finance Asset Mgmt. S.A.,* 535 F.3d 87, 91 (2d Cir.2008).

### D. Developments While the Appeal Has Been Pending

Subsequent to the proceedings in the Bankruptcy Court, the Tribunale di Par-

---

**2.** The *data certa* law, Article 2704 of the Italian Civil Code, provides:

> *Date of private writing as to third persons.* The date of a private writing in which the signature has not been authenticated is not certain and cannot be asserted against third persons, except from the day on which the writing was registered or from the date of death or supervening physical incapacity to sign of the person or persons who signed it, or from the date on which the contents of such writing are reproduced in public acts,

> ... or from the date on which other circumstances occur which establish with equal certainly that the writing was drawn up previously.
> The date of a private writing containing unilateral declarations which are not directed to any specific person can be ascertained through any kind of evidence.
> The court, according to the circumstances of the case, can allow the introduction of any kind of evidence to ascertain the date of release of a debt.

ma, a three-judge tribunal, upheld the decision of the court presiding over the insolvency proceedings.[3] The judge who issued the initial ruling was part of the panel, as is appropriate under local practice. The Tribunale concluded that the choice of law issue was governed by a provision of European Community law, Regulation 1346/2000, which requires the "application, to insolvency proceedings, of the law of the Member State in whose territory the proceeding itself was opened." (Tribunale di Parma, Judgment of Feb. 4, 2008 at 8.) The Tribunale viewed the proceeding as governed by principles of *lex concursus* because competing claimants were asserting entitlement to a single pool of assets.[4] It viewed the policies underlying the "rigorous" enforcement of the methods of proving the date of an obligation as necessary to avoid backdating of obligations by a debtor. (*Id.* at 10.) The panel went on to review the emails that had been obtained from Parmalat in the course of the insolvency proceedings and concluded that they were "extremely generic" and did not establish the fact of the guarantee or its date of issuance. (*Id.* at 11.) It explained why, under local law, oral testimony was not permissible. (*Id.* at 11–13.)

The decision of the Tribunale di Parma is subject to the right of appeal to the Court of Appeal of Bologna and, if necessary, to the Supreme Court of Cassation of Italy. (Tracanella Decl. ¶ 8; Comet Letter of Feb. 20, 2008.) Because an issue of EU law is at stake, ABN may seek further review by the European Court of Justice. (Tracanella Decl. 18.)

### E. *Discussion*

■■ Section 304, now repealed,[5] permits a foreign representative to file a petition in bankruptcy court instituting a case ancillary to a foreign proceeding. 11 U.S.C. § 304(a) (repealed 2005). The bankruptcy court is empowered to "enjoin the commencement or continuation of—(A) any action against—(i) a debtor with respect to property involved in such foreign proceeding." 11 U.S.C. § 304(b). The statute lists six factors which the court is required to consider in deciding whether to grant relief under section 304(b). "[T]he court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with" the six factors:

(1) just treatment of all holders of claims against or interests in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity; and

---

3. This Court granted the parties the opportunity to submit supplemental briefing and submissions on the appellate court's decision and, indeed, on the course of proceedings in the Italian Courts and their experts' views of the applicable principles of law governing ABN's claim.

4. Black's Law Dictionary defines "concursus" as "a proceeding in which two or more creditors claim, usu. adversely to each other, an interest in a fund or estate so that they can sort out and adjudicate all the claims on the fund." (Online edition, 2004 Thomson Reuters/West.)

5. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 repealed section 304 of the Bankruptcy Code. The section was in effect at the time Parmalat filed its ancillary proceedings in the Bankruptcy Court on June 22, 2004 and governs this appeal.

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 304(c). A bankruptcy court is required to engage in a case-by-case balancing of these factors. *Argo Fund, Ltd.,* 528 F.3d at 170 (citing *In re Treco,* 240 F.3d at 154).

■] ABN argues that the Bankruptcy Court failed to properly assess, balance and consider the section 304(c) factors. It focuses principally upon just treatment of creditors, protection of claim holders against prejudice and inconvenience and comity. 11 U.S.C. § 304(c)(1)(2) and (5). ABN asserts that the Parma Court acted unjustly in applying principles of *data certa* to a contract with a New York choice of law provision. (ABN Brief at 14.) It disclaims reliance upon any argument that the *data certa* statute, itself, is repugnant to United States law. (*Id.* at 22–23.) It does challenge the manner in which the Tribunale di Parma has applied *data certa* in this case. (*Id.*) It asserts that the application of the *data certa* statute to the guarantee and the failure to apply New York law demonstrates that the Italian Courts have not provided just treatment to all creditors, U.S. creditors are prejudiced and the rulings of the Italian Courts in this matter ought not be recognized under principles of comity.

■ "The 'just treatment' factor is satisfied upon a showing that the applicable law 'provides for a comprehensive procedure for the orderly and equitable distribution of [the debtor]'s assets among all of its creditors.'" *Argo Fund, Ltd.,* 528 F.3d at 170 (citing *Treco,* 240 F.3d at 158). Here,

ABN and all other claimants were afforded a comprehensive procedure for claims processing subject to a right of appeal. There has been no showing that the Court inconsistently applied choice of law principles or the *data certa* statute to favor one group of claimants over another or to favor the debtor over creditors.

ABN's "prejudice" argument under section 304(c)(2) substantially tracks its argument on lack of just treatment of creditors and focuses on what it perceives as the unjust and prejudicial application of the *data certa* law. ABN, an international financial institution, does not raise on appeal any significant logistical "inconvenience" in litigating its claim in Parma.

■] ABN also argues that the rulings of the Italian Courts ought not be accorded comity in this case. " '[C]omity is the ultimate consideration in determining whether to provide relief under § 304,' although it does not 'automatically override the other specified factors.' " *Argo Fund, Ltd.,* 528 F.3d at 171 (quoting *Treco,* 240 F.3d at 156).[6] "Comity is generally appropriate where the foreign 'proceedings do not violate the laws or public policy of the United States and if the foreign court abides by fundamental standards of procedural fairness.' " *Id.* at 171–72 (citing *Finanz AG Zurich v. Banco Economico S.A.,* 192 F.3d 240, 246 (2d Cir.1999)). "Comity, however, does not require that foreign proceedings afford a creditor identical protections as under U.S. bankruptcy law." *Id.* at 173 (citing *Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996, 999 (2d Cir.1993)).

---

6. Comity has been defined as " 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.' " *Argo Fund, Ltd.,* 528 F.3d at 171 (quoting *Hilton v. Guyot,* 159 U.S. 113, 143, 16 S.Ct. 139, 40 L.Ed. 95 (1895)).

To assess ABN's claim that the Italian Courts have acted in a manner which does not provide just treatment of creditors, is prejudicial and is repugnant to fundamental principles of law applied in the courts of this nation, it is useful to examine how courts within the United States would apply their own jurisdictions' rules on proving contracts to a contract with a foreign choice-of-law provision. American courts routinely apply foreign law in commercial transactions. *See, e.g., Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1363 (2d Cir.1993) ("Forum selection and choice of law clauses eliminate uncertainty in international commerce and insure that the parties are not unexpectedly subjected to hostile forums and laws."); *see also Argo Fund, Ltd.,* 528 F.3d at 175 (citing *Canada S. Ry. v. Gebhard,* 109 U.S. 527, 537, 3 S.Ct. 363, 27 L.Ed. 1020 (1883) ("[E]very person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts ....")). "Moreover, international comity dictates that American courts enforce these sorts of clauses out of respect for the integrity and competence of foreign tribunals." *Roby,* 996 F.2d at 1363 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 629, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).[7]

But the law of the forum is routinely applied to the manner of proving an obligation, regardless of the jurisdiction whose law governs the terms of that obligation. "The local law of the forum has been held to determine such matters as exceptions to the hearsay rule, the best evidence rule, and the admissibility of testimony by an interested witness." Restatement (Second) of Conflicts § 138 cmt. a (1971); *see also Pritchard v. Norton,* 106 U.S. 124, 129–30, 1 S.Ct. 102, 27 L.Ed. 104 (1882).[8] A state court would apply the law of the forum to the method of proving a document which was executed in a foreign nation. For example, in *Estate of Guerrero,* 183 Cal.App.3d 723, 727–30, 228 Cal.Rptr. 408, 410–12 (2d Dist.1986), a decedent's will was drafted and executed in Mexico and offered for probate in California. The California appellate court concluded, based on statutory authorities, that because the will was valid under Mexican law, it might be admissible for probate in California. *Id.* But it further held that the will had to satisfy California's best evidence rule, including its requirement that the genuineness of the signatures of the witnesses be proven, even though no such requirement existed under the law of Mexico. *Id.*

Another example, though relating to the laws of two American jurisdictions, is found in the decision of the Supreme Court of Oregon, responding to a certified question of the United States Court of Appeals for the Ninth Circuit. *Equitable Life Assur. Soc. of the U.S. v. McKay,* 306 Or. 493, 760 P.2d 871 (1988); *Equitable Life Assur. Soc. of the U.S. v. McKay,* 837 F.2d 904, 905–06 (9th Cir.1988) (certifying the question). The parties to the proceeding had stipulated that the substantive law of the state of Washington controlled. *Id.* at 495, 760 P.2d 871. Washington's dead

---

7. The application of the choice-of-law and choice-of-forum provisions may be overcome by a clear showing of fraud, overreaching, grave inconvenience, fundamental unfairness or a strong public policy to the contrary. *Id.*

8. Rule 1002, Fed.R.Evid., provides that "[t]o prove the content of a writing ... the original writing ... is required, except as otherwise provided in these rules or by Act of Congress." Rule 1003 allows the use of copy unless its authenticity has been genuinely challenged or it would otherwise be unfair to do so. Rules 1004 and 1007 contain other exceptions.

man statute would preclude the decedent's widow and an insurance agent from testifying to transactions with the decedent. *Id.* The question remained whether the Washington statute would preclude the testimony of the witnesses in an action pending in the United States District Court for the District of Oregon. *Id.* at 495–96, 760 P.2d 871. The Supreme Court of Oregon concluded that the Washington rule was procedural and that the evidentiary standard governing the testimony of witnesses was that of the forum. *Id.* at 497–98, 760 P.2d 871 ("Rules governing the admissibility of evidence generally are considered to be matters relating to the administration of justice; thus, the law of the forum state applies to those matters."). Because the testimony would be admissible if not barred by the Washington statute, the Ninth Circuit reversed the district court's grant of summary judgment premised upon the inadmissibility of the testimony. *Equitable Life Assur. Soc. of the U.S. v. McKay*, 861 F.2d 221, 223–24 (9th Cir.1988) (after response of Supreme Court of Oregon).

The simple point is that there is nothing antithetical to fundamental notions of due process of law as applied in the courts of this nation in applying the law of the forum to the manner in which an obligation is proven, even if some other jurisdiction's substantive law is applicable to that obligation. The *data certa* statute is intended to avoid a backdated obligation, a legitimate concern in the insolvency context. The rule applies to proving the existence of the agreement, not the interpretation of its terms. No principle of Italian law has been used to interpret any term of the agreement. This is not a case where the application of New York law is urged because it was the place of execution or because the center of gravity is New York. *See Tri–State Employment Servs., Inc. v. Mountbatten Sur. Co.*, 295 F.3d 256, 260–61 (2d Cir.2002) (citing *In re Allstate Ins. Co. and Stolarz*, 81 N.Y.2d 219, 227, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993)). There is no evidence in the record as to the place of the alleged execution of the guarantee by Calisto Tanzi, then Chairman of Parmalat S.p.A.

On its face, the text of Article 2704 would not appear to be an insurmountable obstacle to enforcing an agreement. The statute contains a broad "other circumstances" means of proving the date of execution of a document: "[t]he date of a private writing in which the signature has not been authenticated is not certain and cannot be asserted against third persons, except ... from the date on which other circumstances occur which establish with equal certainty that the writing was drawn up previously."

ABN forcefully argues that the Tribunale di Parma erroneously applied the "other circumstances" exception under Article 2704. But this misperceives the degree of deference that a court of the United States ought to extend to another nation's judicial system. Principles of comity would accord respect to the further avenues of appellate review that the Italian judicial system provides. Review by the Court of Appeal of Bologna and, if necessary, the Supreme Court of Cassation will afford ABN the full opportunity to assert that there was error by the Tribunale di Parma. ABN may have strong arguments that the date of execution of the guarantee is proven by extraneous evidence such as emails, the testimony of witnesses and other circumstances.[9]

---

**9.** Indeed, in response to an inquiry from this Court, U.S. counsel to Parmalat is unable to state, at this late date, that it has a good faith basis to either admit or deny execution of the Guarantee on or about the date it bears. (Or-

ABN's arguments will be considered in the remaining avenues for appellate review. Italian Courts have strong reasons to enforce valid obligations incurred by their citizens, lest banks and other commercial entities hesitate to do business with them because of uncertainties regarding enforceability. It will be in the hands of the Italian Courts to determine whether ABN is entitled to further relief.

On this record, this Court concludes that the Bankruptcy Court did not find facts erroneously, did not apply incorrect principles of law and did not abuse its discretion in assessing and balancing the considerations under section 304(c) and entering a permanent injunction. The July 27 Order is affirmed.

SO ORDERED.

ders of September 2 and 3, 2008; Comet    Letter of September 16, 2008.)